HOMER F. ALTEVOGT *et al.*, Plaintiffs-Appellants, *v.* TOM BRINKOETTER AND COMPANY *et al.*, Defendants-Appellees.—(THE CITIZENS NATIONAL BANK OF DECATUR, Defendant.)

Fourth District   No. 15645

Opinion filed March 5, 1980.

Gary F. Geisler, of Geisler, Waks & Geisler, of Decatur, for appellants.

William O. Martin, Jr., of Samuels, Miller, Schroeder, Jackson and Sly, of Decatur, for appellee Tom Brinkoetter and Company.

Jeffrey D. Richardson, of Rosenberg, Rosenberg, Bickes and Johnson, of Decatur, for appellee John Hinton, Jr.

Mr. JUSTICE GREEN delivered the opinion of the court:

Plaintiffs, Homer F. and Sarah M. Altevogt, appeal portions of a June 6, 1979, judgment of the circuit court of Macon County dismissing in bar of action count I of the second amended complaint directed against defendant Thomas Brinkoetter and count III directed against defendant John (Sonny) Hinton. They do not appeal the dismissal of the other count of that complaint, count II, directed against defendant, Citizens National Bank of Decatur (Citizens).

The complaint sought recovery for imperfections in a house built by defendant Hinton for defendant Brinkoetter and sold by him to plaintiffs. Count I claimed a breach of an implied warranty of habitability, and count III maintained that plaintiffs were entitled to damages as third-party beneficiaries of a warranty of reasonable workmanship impliedly made by Hinton to Brinkoetter when Hinton agreed to construct the house. The judgment of dismissal was entered pursuant to motions of Brinkoetter and Hinton, with each contending that the count directed against them failed to state a cause of action and, if it did do so, the cause was shown on the face of the complaint to be barred by the statute of limitations. The trial court recited the statute of limitations as the reason for its ruling as to count I and the failure of count III to state a cause of action as the reason for its ruling as to that count.

Count I alleged that (1) sometime prior to June 8, 1973, defendant Brinkoetter placed a certain lot of land in a land trust with defendant Citizens as trustee and then through that trustee "built or caused to be built" a residence thereon; (2) on May 1, 1973, Brinkoetter contracted to sell the premises to plaintiffs; (3) on June 8, 1973, "plaintiffs purchased the premises from said trustee"; (4) Brinkoetter knew plaintiffs were buying the property as a dwelling for themselves and their family; (5) by the contract and the sale, Brinkoetter impliedly warranted that the residence would be fit for habitation; (6) the house was unfit for habitation for various enumerated reasons; (7) those defects were unknown to plaintiffs at the time of purchase or completion of the house and could not have

then been discovered by any reasonable means; and (8) plaintiffs were damaged thereby. The count did not state when the house was completed.

The parties do not dispute that the statutory five-year limitation for bringing suit for breach of an oral contract (Ill. Rev. Stat. 1977, ch. 83, par. 16) is also the applicable limitation for bringing an action for breach of an implied warranty. (*Mowatt v. City of Chicago* (1920), 292 Ill. 578, 127 N.E. 176; *Schmidt v. Kiely* (1977), 51 Ill. App. 3d 122, 366 N.E.2d 455.) The dispute is as to when the period starts to run. Both plaintiffs and defendant Brinkoetter look to language in *Petersen v. Hubschman Construction Co.* (1979), 76 Ill. 2d 31, 389 N.E.2d 1154. There the court held that a builder-vendor of dwellings built by it for sale to others, impliedly warrants in its contract of sale to the original purchaser that the dwelling is habitable and that this warranty is not merged in the deed given by the vendor upon the sale. Plaintiffs rely on the following statement as establishing the rule that the period of limitation begins when the house is completed:

"\* \* \* we hold that implied in the contract for sale from the builder-vendor to the vendees is a warranty that the house, when completed and conveyed to the vendees, would be reasonably suited for its intended use." (76 Ill. 2d 31, 42, 389 N.E.2d 1154, 1159.)

Defendant Brinkoetter relies on the following to show that the period begins with the agreement to sell the house to the purchaser:

"\* \* \* The implied warranty does not arise as a result of the execution of the deed. It arises by virtue of the execution of the agreement between the vendor and the vendee." 76 Ill. 2d 31, 41, 389 N.E.2d 1154, 1158.

The trial court agreed with Brinkoetter and held that, on the basis of the allegations of count I, the limitation period began to run on the date of the contract, May 1, 1973. That was more than five years before the original complaint was filed on July 12, 1978.

■■ We agree with plaintiffs. As argued by Brinkoetter, the warranty does arise impliedly from the contract of sale. However, when a deed subsequently passes, the implied warranty is not merged in the deed (*Petersen*) but continues. The warranty is as to the condition of the house *at the time it is completed* and the deed has passed (*Petersen*). Thus, the warranty cannot be breached until both of those things have taken place. If, when those things do occur, the house is habitable, the implied warranty is fulfilled. If it is not then habitable, the implied warranty is breached and the period for bringing an action for the breach would begin to run unless tolled for some reason. Cases from other jurisdictions have been called to our attention. We deem the soundest to be *Sponseller*

*v. Meltebeke* (1977), 280 Ore. 361, 570 P.2d 974, which reaches the same conclusion as we do. (See also *Tomes v. Chrysler Corp.* (1978), 60 Ill. App. 3d 707, 377 N.E.2d 224; *Matchett v. Rose* (1976), 36 Ill. App. 3d 638, 344 N.E.2d 770.) We hold that the limitation period for the implied warranty of habitability of a dwelling begins to run when the house is completed and the deed for the house has passed, whichever is later.

Defendant Brinkoetter's claim that the statute of limitations had run was stated in terms that count I of the complaint showed on its face that it was barred for that reason. Because the count did not state when the house was completed, it did not show when the statute began to run. As that was not shown we cannot tell when the limitation period expired, and thus we cannot find that the count shows on its face that the period had expired. Accordingly, the count should not have been dismissed for the reason stated.

We recognize that a dispute exists between the parties as to whether the limitation period was tolled against Brinkoetter (1) when the second amended complaint was filed on March 9, 1979, first making him a party, or (2) whether section 46(4) of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 46(4)) operated to toll the period when the original complaint was filed on July 12, 1978, and Tom Brinkoetter was named as a party. In view of our ruling that count I did not show when the limitation period ended and thus did not show on its face that the period had run, we need not discuss this matter further on this appeal and on the basis of this record.

Plaintiffs contend that the implied warranty of habitability recognized in *Petersen* arises also from the sale of a new house built for the market when the seller is not, as in *Petersen,* also the builder of the house but is merely a developer who has contracted with an independent builder to construct the house. The record does not indicate that the trial court passed on the question of whether such a cause of action exists or whether count I was sufficient to allege such a cause of action. Because of the importance of this question and the precedent to be set by an ultimate ruling thereon, we deem it appropriate that we do not pass upon these questions until the trial court has done so. *Hickey v. Illinois Central R.R. Co.* (1964), 30 Ill. 2d 163, 195 N.E.2d 716.

Count III alleged that (1) Hinton contracted with Brinkoetter to build a house for the latter on the premises in question; (2) in contracting Hinton impliedly warranted to do the work in a reasonably workmanlike manner; (3) Hinton knew the house was not to be inhabited by Brinkoetter but was to be held out for sale to buyers; (4) on June 8, 1973, plaintiffs purchased the premises and have paid the full purchase price; (5) the residence was completed on or about the last week of July 1973; (6) the house was not constructed in a reasonably workmanlike manner in

enumerated ways; (7) the defects were unknown to plaintiffs until after the house was completed and could not have reasonably been discovered sooner; (8) plaintiffs notified Hinton of the defects within a reasonable time and Hinton then attempted to remedy some defects but did not remedy all of them; and (9) plaintiffs have been damaged by the faulty workmanship.

Count III is based upon the theory that Hinton impliedly warranted to Brinkoetter that the house was constructed in a reasonably work-manlike manner and that plaintiffs, as purchasers of the property, were third-party beneficiaries of the warranty. We need not decide whether such a warranty extending to Brinkoetter would have arisen under the allegations of the complaint (see *Solar v. Dominick's Finer Foods, Inc.* (1978), 65 Ill. App. 3d 192, 382 N.E.2d 581), because we conclude that under Illinois law, plaintiffs would not be third-party beneficiaries of such a warranty.

The courts of this State have held express agreements to be for the benefit of third-parties under the following situations: (1) a hotel owner who agreed with its bond underwriters to pay for furniture was held liable to suppliers of furniture (*Carson Pirie Scott & Co. v. Parrett* (1931), 346 Ill. 252, 178 N.E. 498); (2) insurance broker who agreed with client to procure policy held liable to party injured by client (*Gothberg v. Nemerovski* (1965), 58 Ill. App. 2d 372, 208 N.E.2d 12); and (3) a resident of subdivision seeking to connect to water main of county held to have standing to sue to require county to permit it to do so when county had purchased water facilities from developer upon promise that residents of subdivision could connect without charge (*Kravitz v. County of Lake* (1978), 62 Ill. App. 3d 101, 379 N.E.2d 126). In *Rhodes Pharmacal Co. v. Continental Can Co.* (1966), 72 Ill. App. 2d 362, 219 N.E.2d 726, a defendant sold its products to a party who in turn sold to a plaintiff in the ordinary course of business. The plaintiff was held to be the third-party beneficiary of the defendant's warranty of quality impliedly made to its direct purchaser. The rationale of the holding was that in view of the situation where goods move freely in interstate commerce, manufacturers must realize that purchasers throughout the chain of commerce will rely upon the manufacturer's warranties.

In *People ex rel. Resnik v. Curtis & Davis, Architects & Planners, Inc.* (1980), 78 Ill. 2d 381, 400 N.E.2d 918, the State of Illinois was held to be a third-party beneficiary of a contract whereby an electrical contractor agreed with the Illinois Building Authority to perform work on a prison to be rented to the State. The court deemed the controlling factor to be that the State was clearly shown in the written agreement between the electrical contractor and the building authority to be the intended beneficiary of the agreement. The principal authorities cited by the court

were *Carson Pirie Scott & Co.* and 2 Williston, Contracts §§ 356, 356A (1959). Also cited as being in accord was *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 250 N.E.2d 656, which included a situation somewhat similar to that alleged in count III.

In *Rozny*, evidence indicated that purchasers of a new house had relied to their detriment upon a faulty survey made for the developer by a surveyor who knew that the premises were being developed for sale in the market. The surveyor issued a certificate of the accuracy of the plot. The supreme court upheld a finding for the purchasers against the surveyor on a theory of tortious negligent misrepresentation but rejected the purchasers' theory that they were third-party beneficiaries of the contract between the developer and the surveyor. The court stated that the surveyor knew that the survey would be relied on by persons purchasing the premises but concluded that the contract between the developer and the surveyor was not made for the direct benefit of the purchasers.

■■ Although courts of two other States have permitted recovery upon a theory similar to that alleged here (*Vandewater & Lapp v. Sachs Builders, Inc.* (1959), 20 Misc. 2d 677, 186 N.Y. Supp. 2d 103; *Stotlar v. Hester* (1978), 92 N.M. 26, 582 P.2d 403), we choose to follow *Rozny*. Here, as in *Rozny*, the defendant Hinton performing services for a builder was alleged to know that the services were being performed so that the premises might be sold in the market. Unlike in *People ex rel. Resnik* it was not set forth that Hinton knew who the ultimate purchaser or user of the premises would be. Significance should also be given to the fact that here the contractual provision alleged to be breached was merely an implied one. To extend third-party beneficiary status on plaintiffs we would be implying an intent to benefit them upon an agreement that was itself implied. We deem the dictum of *Rozny* approved in *People ex rel. Resnik* to be sound.

Accordingly, we reverse the portion of the judgment dismissing count I and remand the case to the trial court for further proceedings as to that count. We affirm as to the balance of the judgment.

Affirmed in part; reversed in part; remanded.

MILLS, P. J., and TRAPP, J., concur.