ROBERTO TASSAN *et al.*, Plaintiffs-Appellants, *v.* UNITED DEVELOPMENT COMPANY *et al.*, Defendants-Appellees.

First District (4th Division)   No. 79-618

Opinion filed August 28, 1980.—Rehearing denied October 9, 1980.

582

Michael J. Hamblet and Halbert O. Crews, both of Chicago (Greenberg, Keele, Lunn & Aronberg, of counsel), for appellants.

Jack Guthman and Arlene C. Erlebacher, both of Sidley & Austin, of Chicago, for appellees.

Mr. PRESIDING JUSTICE LINN delivered the opinion of the court:

Plaintiffs bring this appeal from an order entered in the circuit court of Cook County dismissing counts I and IV of their four-count amended complaint. The order was made final and appealable by the trial court. Count I sought damages from defendants Inland-Robbins Construction, Inc. (Inland), and United Development Company (United) for an alleged breach of an implied warranty of habitability. Court IV sought damages from United for an alleged breach of an express warranty.

On appeal, plaintiffs contend that the two counts should not have been dismissed. We agree and reverse and remand.

The seven named plaintiffs are all original owners of condominium units in a newly constructed 95-unit building located in Elk Grove Village and called "Village on the Lake Condominium No. 5." This building is one of several condominium buildings constructed by Inland on land beneficially owned by United. United was both the developer and seller of the condominium units.

Plaintiffs brought this action on behalf of themselves and all past and present owners of units in Condominium No. 5. Plaintiffs and all members of the proposed class are past or present members of the Village on the Lake Condominium No. 5 Association, an unincorporated, not-for-profit association in charge of managing Condominium No. 5.

Count I of plaintiff's amended complaint alleged that United, as developer-seller of the condominium units, had breached an implied warranty of habitability by continuously refusing to repair certain defects in the condominiums that existed at the time of sale. The alleged defects were all defects in the common elements in which each unit owner owned an individual interest. Those defects were as follows:

    (a) The exterior walls were built of inferior materials resulting in water leaking into the units;

    (b) The central heating system was inadequate and could not sufficiently heat all of the bedrooms in some of the units;

    (c) There was a faulty hot water system so that certain of the units did not get sufficient hot water;

    (d) The central smoke detection system was improperly installed;

    (e) There was inadequate drainage of the surface waters in front of the building;

(f) Certain central plumbing equipment was corroding as a result of inadequate protection provided for the equipment;

(g) The fire sprinkler heads were blocked in violation of local fire codes;

(h) The trash rooms on four of the floors were inadequately ventilated.

Plaintiffs alleged that as a result of United's failure to repair the above defects all of the members of the proposed class had and would suffer pecuniary damage because the Condominium Association spent and would spend money to carry out the repairs, the cost of which was and would be assessed to the members of the association. Plaintiffs also alleged that "certain" of the class members had suffered damage to their personal property within their respective units because of water leaking into the units through the exterior walls. Plaintiffs sought to hold United liable for all of the above damages and to hold Inland jointly and severally liable as a joint venturer with United in the construction and sale of the units.

Count IV of the amended complaint was brought against United only and sought damages for breach of an express warranty found in the individual contracts for sale of the units. Count IV alleged the same defects and the same kinds of damages as count I of the amended complaint.

The express warranty was found in a rider attached to the standard form contract of sale used by United to sell the units to each individual owner. Under one part of the express warranty, United warranted that it would repair all defects in the common elements due to faulty materials or workmanship if United received written notice of such defects within one year after the date they were first used.

The record discloses that some of the original sales by United to unit purchasers were made more than one year before the plaintiffs brought this action. Since the express warranty was conditioned on United's receiving notice of defects in the common elements within one year from the date they were first used, plaintiffs alleged, on information and belief, that "numerous" of the unit owners had given the required notice of the defects in the common elements. Though the seven named plaintiffs did not themselves allege compliance with the one-year provision, the plaintiffs in another paragraph of count IV alleged that "plaintiffs" had performed all conditions precedent necessary to recover from United for breach of the express warranty.

The trial court, pursuant to defendants' motion to dismiss under sections 45 and 48 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, pars. 45, 48), dismissed counts I and IV of the amended complaint. In a six-page order, the court explained its reasoning. The reasons given by the trial court have been the subject of much dispute on this appeal. Plaintiffs have attempted to interpret the order as being dispositive on only a limited

number of issues and allege only those issues need be reviewed and determined here. Defendants, on the other hand, have briefed and argued a plethora of issues and subissues based on the assumption that the trial court gave a multitude of reasons for dismissing the two counts. Though our review of the issue of whether the two counts of the amended complaint should have been dismissed, a question of law, is not limited to the specific reasons given by the trial court, to the extent we feel it appropriate, we will address those issues we consider relevant to our decision and point out those issues that we believe have not been determined below and, for the reasons we will state, should not be determined here.

OPINION

I

The trial court dismissed count I of the amended complaint by holding that United had effectively disclaimed the implied warranty of habitability by a disclaimer clause found in the standard form contract used by United to sell the individual units. This standard form contract is one page long with terms listed in 20 different paragraphs on both sides of the page. The contract provides blanks to be filled in with each purchaser's name, the purchase unit number and price, the terms for financing, and the designation of the percentage of the unit owner's undivided interest in the common elements. Outside of this, all of the terms are preprinted in like-size, small print.

Paragraph 18 of the contract contains the disclaimer clause in dispute here. In appears on the back of the form approximately one to two inches above the buyer's signature. This paragraph does not stand out from the other paragraphs of the contract. It reads:

> "*Entire Agreement*: This contract and the matters expressly referred to herein constitute the entire agreement between the parties. No representations, warranties, undertakings or promises, whether oral, implied or otherwise, have been made by Seller or Purchaser to the other unless expressly stated herein, or unless mutually agreed to in writing between Seller and Purchaser. All amendments, modifications, and supplements to this contract shall be in writing executed by both Seller and Purchaser."

The trial court held, as a matter of law, that this paragraph effectively disclaimed any implied warranty of habitability given by United. Implicit in the trial court's ruling is the underlying assumption that an implied warranty of habitability can exist at all in this case. Though the parties appear to concede that an implied warranty of habitability may attach to the sale of a new condominium and to defects in the common elements, they have briefed and argued several related issues including the following: (1) does a developer-seller (United) who is not technically the builder

make an implied warranty of habitability; and (2) can Inland, who is not in privity with the original purchasers, be held liable for breach of an implied warranty of habitability?

We first address the issue of United's potential liability as a developer-seller. United argues that our supreme court's recent decision in *Peterson v. Hubschman Construction Co.* (1979), 76 Ill. 2d 31, 389 N.E.2d 1154, precludes a finding that United could make an implied warranty of habitability. *Peterson* was the first Illinois Supreme Court decision to recognize the implied warranty of habitability. That case held that a builder-seller of a new home makes an implied warranty of habitability. United apparently contends that the supreme court in *Peterson* intended to limit the future effect of its opinion to cases involving only builder-sellers of new dwellings. We believe that the supreme court's decision cannot be given such a narrow interpretation.

As the court noted in *Peterson*, "The implied warranty of habitability in cases involving the sale of new homes by a builder-vendor is a judicial innovation of rather recent origin * * *." (76 Ill. 2d 31, 38, 389 N.E.2d 1154, 1157.) As with any new doctrine created by the judiciary, the issues involving that doctrine should be determined only when the need arises. *Peterson* involved only a builder-seller and hence there was no need in that case to consider whether a developer-seller makes an implied warranty of habitability. The need to determine this issue has now arisen.

■■ Initially, we note that other jurisdictions which have adopted the implied warranty of habitability and have been faced with the same question presented here have consistently held that a party in the same or similar position as United can be held liable for breach of an implied warranty of habitability. (See, *e.g., Capra v. Smith* (Ala. 1979), 372 So. 2d 321; *Bolkum v. Staab* (1975), 133 Vt. 467, 346 A.2d 210; *Mazurek v. Nielsen* (1979), ___ Colo. App. ___, 599 P.2d 269.) The reason for so holding is obvious. As the supreme court noted in *Peterson*, the fundamental reason for requiring an implied warranty of habitability to attach to the sale of new homes by a builder-seller is "because of the unusual dependent relationship of the vendee to the vendor." (76 Ill. 2d 31, 41, 389 N.E.2d 1154, 1158.) Purchasers from a builder-seller depend on his ability to construct and sell a home of sound structure. Purchasers from a developer-seller depend on his ability to hire a contractor capable of building a home of sound structure. The buyers here had no control over United's choice of a builder. United stood in the best position to know which contractor could perform the work adequately. The dependent relationship here between the buyers and United is the same as if United was a builder-seller. Necessarily, we hold that United could be deemed to have made an implied warranty of habitability in this case.

The next issue we consider is whether Inland can be held liable for

breach of an implied warranty of habitability. We note that plaintiffs in their amended complaint did not allege that Inland had breached an implied warranty of habitability. They only alleged that Inland should be jointly liable with United for United's breach of an implied warranty of habitability. The basis for liability allegedly depended on the relationship between United and Inland as joint venturers.

Every member of a joint venture is liable to third persons for acts of his fellow venturers done in the course of the enterprise. (*Baker Farmers Co. v. ASF Corp.* (1975), 28 Ill. App. 3d 393, 328 N.E.2d 369; *Joseph W. O'Brien Co. v. Highland Lake Construction Co.* (1972), 9 Ill. App. 3d 408, 292 N.E.2d 205.) The implied warranty of habitability arises as the result of the act of sale of a new residence. (*Peterson v. Hubschman Construction Co.* (1979), 76 Ill. 2d 31, 389 N.E.2d 1154; *Altevogt v. Tom Brinkoetter & Co.* (1980), 81 Ill. App. 3d 711, 401 N.E.2d 1302.) Hence, if plaintiffs can show there was a joint venture and that United's act of sale of the condominium units was within the scope of the enterprise, Inland can be held jointly liable with United if United is shown to have breached an implied warranty of habitability.

We consider now whether the "entire agreement" clause in United's standard form contract effectively disclaimed, as a matter of law, United's implied warranty of habitability. This issue is resolved by reference to language in *Peterson*, where the supreme court said:

> "[W]e do not consider a knowing disclaimer of the implied warranty to be against the public policy. However, we do hold that any such a disclaimer must be strictly construed against the builder-vendor. [Citation.] We refer to the well-reasoned opinion of the Supreme Court of Missouri in *Crowder v. Vandendeale* (Mo. 1978), 564 S.W.2d 879, where it was held that "boilerplate" clauses, however worded, are rendered ineffective in such a disclaimer [citation], and the court further stated:
>
> > '[O]ne seeking the benefit of such a disclaimer must not only show a conspicuous provision which fully discloses the consequences of its inclusion but also that such was *in fact* the agreement reached. The heavy burden thus placed upon the builder is completely justified, for by his assertion of the disclaimer he is seeking to show that the buyer has relinquished protection afforded him by public policy. A knowing waiver of this protection will not be readily implied.' (Emphasis in original.) [Citation.]" 76 Ill. 2d 31, 43, 389 N.E.2d 1154, 1159.

As *Peterson* indicates, even when a seller includes in the contract a conspicuous clause specifically disclaiming the implied warranty of habitability, this may not be enough to show that such was *in fact* the agreement reached. The burden is on the seller to prove that the buyer

knew that the implied warranty did not attach to the sale of the new residence.

This is not to say that language used in the contract of sale is irrelevant to determining whether the implied warranty has been disclaimed. Any disclaimer clause would be evidence to support such an allegation. Also, there may exist a situation where the language used in a contract is so clear and so conspicuous that no other reasonable conclusion could be reached but that the buyer both read and understood the language, in which case a court could find as a matter of law that the implied warranty was effectively disclaimed. But that is not the case here.

■■ In the present case, the disclaimer clause in the contract for sale was located on the back of the standard form contract amidst other clauses in the same size, small print as all the other clauses of the contract. The clause does not even mention "habitability" or explain what the consequences of such a disclaimer are. This clause was undoubtedly insufficent to show, as a matter of law, the implied warranty of habitability was effectively disclaimed.

Therefore, we conclude it was improper to dismiss count I of the amended complaint based on the finding that the "entire agreement" clause effectively disclaimed the implied warranty of habitability.

## II

United has raised two other issues directly attacking the issue of whether an implied warranty of habitability can exist at all in this case. Those issues are: (1) does an express warranty allegedly covering the same subject matter as the implied warranty of habitability displace the implied warranty and render it nonactionable; and (2) are the defects allegedly covered by the implied warranty of habitability in the present case patent defects as a matter of law, thus precluding the existence of the implied warranty which covers only latent defects?

As to the first issue, United alleges that when an express warranty covers the same subject matter as an implied warranty, the implied warranty is displaced and rendered non-actionable. Though there are no cases dealing with this issue as to the implied warranty of habitability, there is analogous authority on this issue concerning transactions involving goods.

United has cited two authorities that directly support its proposition in transactions involving goods. One such authority is a dated American Law Reports annotation where it is said that an express warranty covering the same subject matter as an implied warranty of fitness renders that implied warranty nonactionable. (Annot., 164 A.L.R. 1321 (1946).) The other authority is an Ohio case where it is said that an express warranty covering the same subject matter as an implied warranty of merchantability renders that implied warranty nonactionable. (*Inglis v. American Motors Corp.*

(1965), 3 Ohio St. 2d 132, 209 N.E.2d 583.) It appears though that the overwhelming weight of authority in Illinois and other jurisdictions supports the contrary conclusion that an express warranty covering the same subject matter as an implied warranty of merchantability or an implied warranty of fitness for a particular purpose does not render either of those implied warranties nonactionable. *Murray v. Kleen Leen, Inc.* (1976), 41 Ill. App. 3d 436, 354 N.E.2d 415; *Sutter v. St. Clair Motors, Inc.* (1963), 44 Ill. App. 2d 318, 194 N.E.2d 674; *Appleman v. Fabert Motors, Inc.* (1961), 30 Ill. App. 2d 424, 174 N.E.2d 892; *Singer Co. v. E. I. du Pont de Nemours & Co.* (8th Cir. 1978), 579 F.2d 433; *Lee v. Air Care, Inc.* (D.C. App. 1974), 325 A.2d 598; *Gable v. Silver* (Fla. App. 1972), 258 So. 2d 11; *Koellmer v. Chrysler Motors Corp.* (1970), 6 Conn. Cir. 478, 276 A.2d 807.

■■ We believe in the present case that a one-year express warranty allegedly covering the same defects as the implied warranty of habitability should not render that implied warranty nonactionable. The implied warranty of habitability covers only latent defects. (*Peterson v. Hubschman Construction Co.* (1979), 76 Ill. 2d 31, 389 N.E.2d 1154.) Latent defects in a new home or a new condominium may well not be discovered until after the first year a buyer takes possession. To allow a one-year express warranty to entirely displace an implied warranty of habitability could have the effect of allowing a seller to disclaim the implied warranty without forcing him to prove that there was a knowing acceptance of such disclaimer on the part of the buyer. All a seller would need to do is to provide an express warranty in the written contract covering all defects for a period of one year, six months, or even a month. Thus, the seller could preclude any liability for latent defects without the buyer knowing that such liability has been precluded. Hence, we necessarily hold that the one-year express warranty in this case did not displace and render nonactionable the implied warranty of habitability.

We next consider whether the defects alleged in count I of plaintiffs' amended complaint are patent defects as a matter of law. As already mentioned, the implied warranty of habitability covers only latent defects. Hence, if the defects alleged are patent defects then plaintiffs have no action for breach of the implied warranty.

■ A latent defect has been defined as one which, in the circumstances of the case, could not have been discovered by the exercise of ordinary and reasonable care. (*McGourty v. Chiapetti* (1962), 38 Ill. App. 2d 165, 186 N.E.2d 102.) A patent defect, of course, would be one which could have been discovered by the exercise of ordinary and reasonable care. It would appear that whether a defect is latent or patent is generally a question of fact since it depends on a standard of reasonableness in the given circumstances. Thus, the only time a court could determine the question as a matter of law is when reasonable minds could not differ as to whether the

defects are latent or patent. (See *Amsted Industries, Inc. v. Pollak Industries, Inc.* (1978), 65 Ill. App. 3d 545, 382 N.E.2d 393.) Based merely on the allegations of plaintiffs' complaint, we cannot find that the only reasonable conclusion that could be reached is that the alleged defects are patent. Since a motion to dismiss raises only a question of law (see *People ex rel. Lee v. Kenroy, Inc.* (1977), 54 Ill. App. 3d 688, 370 N.E.2d 78), we must hold that whether the alleged defects are latent or patent cannot be determined at this time.

### III

We now consider a specific issue raised concerning the dismissal of count IV of the amended complaint which alleged breach of an express warranty by United. United expressly warranted to repair all defects in the common elements due to faulty material and workmanship if it received written notice of such defects within one year after the date the common elements were first used.

The trial court dismissed count IV because the named plaintiffs had failed to plead that they themselves had complied with the one-year written notice provision. As previously noted, plaintiffs alleged in count IV the same defects in the common elements they alleged in count I. They went on to allege that upon information and belief "numerous" of the members of the proposed class had given the necessary notice of the defects in the common elements. They also alleged that "plaintiffs" had complied with all conditions precedent necessary to give rise to United's liability on its express warranty.

United concedes that if plaintiffs had simply alleged compliance with all conditions precedent that would have been a sufficient pleading of the named plaintiffs' compliance with the one-year notice requirement. (See Supreme Court Rule 133(c) (Ill. Rev. Stat. 1979), ch. 110A, par. 133(c)).) But United argues that the named plaintiffs, by pleading that upon information and belief numerous of the members of the class had complied with the one-year provision, indicated that they themselves could not in good faith plead their own compliance with the one-year provision. United concludes that since the named plaintiffs are unable to state a cause of action on their own behalf, they cannot assert and represent the interests of the other proposed class members. See *Landesman v. General Motors Corp.* (1978), 72 Ill. 2d 44, 377 N.E.2d 813.

Even if we were to accept United's argument by concluding the named plaintiffs did not give the necessary notice, we believe that the named plaintiffs have still stated a cause of action on their own behalf.

■■ All of the defects alleged are defects in the common elements. Under the individual contracts for sale each original purchaser of the condominium units received an undivided interest in the common elements, making

them tenants in common as to those common elements. With this in mind, we examine the express warranty clause found in the contracts.

United promised to repair all defects in the common elements if it received notice of such defects within one year of first use. United argues that it cannot be held liable for failure to make those repairs to any plaintiff who did not himself comply with the one-year notice provision even though another plaintiff class member did comply with the one-year provision. This argument has no basis in reason.

Let us assume that because of faulty workmanship there is a one-foot hole in the roof of the condominium building through which water runs into the building causing damage to many of the units of the building. Let us also assume that the roof of the building is a common element. Before the one-year notice period expires, one of the tenants in common gives United written notice of the hole in the roof, but none of the other tenants in common do so. Thereafter, United refuses to repair the roof, though admittedly it would have the duty to do so.

Subsequently, all of the tenants in common bring an action to recover the cost of repairing the one-foot hole in the roof. United alleges that it can only be liable for that amount necessary to repair the percentage of the roof owned by the one tenant in common who gave the proper notice. Hence, United is liable for repairing one-half inch of the hole in the roof but the tenants in common must bear the remainder of the cost to repair the other 11½ inches. In effect, United, by merely refusing to carry out its duty to repair the roof, manages to escape liability for failure to carry out that duty. This would be an unreasonable result.

What United has done is to misconstrue the purpose of the notice provision in the contract. It has construed it to be a condition precedent to its *liability* for failure to make repairs when actually it is a condition precedent to United's *duty* to make repairs.

Construing the notice provision as a condition precedent to United's duty to make repairs, we reach the following more reasonable result. One tenant in common gives United the necessary notice of the hole in the roof. Once such notice is given, United has an absolute duty to repair the roof. It is a duty to repair the entire roof and not just a small percentage of it. Failure to carry out this duty gives rise to liability. It is liability for the amount necessary to repair the entire roof and not just one portion of it. Hence, when the tenants in common bring an action against United, United is liable to all of them jointly for the entire amount necessary to make the repairs despite the fact that only one tenant in common gave the necessary notice.

■■ Hence, in the present case, if the proposed class action is allowed and the allegations of the complaint are proven, United will be liable to all the tenants in common for the entire amount necessary to make the repairs in

the common elements even if it is shown that only one tenant in common gave the necessary notice of the defects in the common elements. Thus, though the named plaintiffs failed to plead their own compliance with the one-year notice requirement, they still stated a cause of action on their own behalf in count IV of the amended complaint since they did plead that *numerous of the class members complied with the one-year provision.*

## IV

We turn now to two issues raised by United attacking the basis of plaintiffs' action as a class action on behalf of all present and past owners of the condominium units. The basic rules for maintaining a class action are found in section 57.2 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 57.2), which reads:

"(a) An action may be maintained as a class action in any court of this State and a party may sue or be sued as a representative party of the class only if the court finds:

(1) The class is so numerous that joinder of all members is impracticable.

(2) There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members.

(3) The representative parties will fairly and adequately protect the interest of the class.

(4) The class action is an appropriate method for the fair and efficient adjudication of the controversy."

United makes two arguments based on the above section, attacking the propriety of plaintiffs' action as a class action. Before discussing these arguments, we point out that though United raised these arguments below, the trial court has not yet made any determination as to whether a class action is appropriate in this case, or if appropriate, as to who should be members of the class or which issues are appropriate for a class action. (See Civil Practice Act, section 57.3 (Ill. Rev. Stat. 1979, ch. 110, par. 57.3).) As the supreme court held in *McCabe v. Burgess* (1979), 75 Ill. 2d 457, 389 N.E.2d 565, the determination of all of these issues is a matter within the discretion of the trial court. Hence, here, our review of these issues is limited to determining whether as a matter of law a class action is inappropriate. This would require us to find that, based on the complaint, no other reasonable conclusion could be reached but that a class action is inappropriate in this case. Keeping this standard of review in mind, we now turn to United's arguments.

■■ United first argues that the proposed class is not so numerous that joinder of all members is impracticable. There are 95 units in condominium No. 5. The record shows that many of these units are owned jointly by

husbands and wives. It appears that there could be more than 150 people in the proposed class. It is true that all of the proposed class members live close to each other, and this may be one consideration in determining whether the class is so numerous that joinder is impracticable, but we cannot hold as a matter of law that the number of people here is too few to maintain a class action.

■■ United next argues that the questions of law or fact common to the class do not predominate over any questions affecting only individual members. Since all of the members of the proposed class are alleging breach of an implied warranty of habitability and breach of an express warranty to repair defects in the common elements, and since all of the proposed class members share, or previously shared, an interest in the common elements, it would appear that there are some common questions of law and fact in this case. However, United points to that part of plaintiffs' amended complaint which alleges injury to the personal property of "certain" of the proposed class members as showing that the common questions of law or fact do not predominate over questions affecting only individual members. But these injuries are allegedly the result of one of the defects in the common elements in that the outer walls are not impervious to water. Hence, we cannot find, as a matter of law, that the common questions of law or fact in this case do not predominate over questions affecting only individual members. As a result, we must reject United's attack on the propriety of the class action at this stage of the proceedings.

## V

We come now to two issues raised by United that we believe we should not determine at this time. United alleges that some of the proposed class members are second purchasers of the condominium units, and plaintiffs have admitted that a few are second purchasers. United contends that an implied warranty of habitability cannot extend to second purchasers who are not in privity of contract with United. United also contends that the express warranty cannot be raised by the second purchasers because of a clause in the original contracts for sale which prohibited the original purchasers from assigning any rights under the contracts.

The trial court has yet to make any ruling on these issues, and we do not believe we should rule on them until the trial court has done so. This is especially true as to the issue of whether second purchasers have any rights under the implied warranty of habitability, a new issue of law which has not yet been addressed by our courts. We only point out at this time that we are faced with a rather unique situation here.

The defects alleged are in the common elements. Each original purchaser owns an undivided interest in the common elements. As such, it would appear that each original purchaser would be entitled to have all of

the common elements repaired completely if there is shown a breach of an implied warranty of habitability or a breach of the express warranty to repair defects in the common elements. We have difficulty discerning how we could separate the interests of the original purchasers in the common elements from the interests of second purchasers in the common elements. But we will not attempt here to resolve this difficulty until the trial court has ruled on whether the second purchasers have any rights.

## VI

The final issue for our determination is whether the plaintiffs have standing to bring this action. Plaintiffs in their amended complaint alleged that all of the proposed class members are present or past members of an unincorporated condominium association in charge of managing Condominium No. 5. Plaintiffs alleged that the amount of damages the class members suffered or will suffer are the result of the association's having to repair the defects in the common elements with the cost of such repairs being proportionately assessed to the class members—the individual unit owners. United alleges that plaintiffs do not have standing to bring this action because the plaintiffs are attempting to assert the rights of the association and not their own individual rights, and only the association can assert those rights.

United bases its argument on certain amendments to the Condominium Property Act (Ill. Rev. Stat. 1979, ch. 30, par. 301 *et seq.*) which amendments were officially published at approximately the same time as plaintiffs filed their amended complaint. As a general rule an unincorporated association cannot maintain an action on its own behalf, and it is generally required that all of the members of the association join in an action to assert association rights. (See *Beagley v. Andel* (1978), 58 Ill. App. 3d 588, 374 N.E.2d 929.) But it appears that as far as condominium associations are concerned, the amendments to the Condominium Property Act have changed this rule.

One of those amendments to the Act was to add section 18.3, which reads:

> "The unit owners' association is responsible for the overall administration of the property through its duly elected board of managers. Each unit owner shall be a member of the association. The association, whether or not it is incorporated shall have the powers specified in the General Not for Profit Corporation Act, approved July 17, 1943, as amended, which are not inconsistent with this Act. The Association shall have and exercise all powers necessary or convenient to effect any or all of the purposes for which the association is organized, and to do every other act not inconsistent with law which may be appropriate to promote and attain the purposes set forth in

this Act or in the condominium instruments." (Ill. Rev. Stat. 1979, ch. 30, par. 318.3.)

Hence, it appears that an unincorporated condominium association has all the powers of a not-for-profit corporation, including the power to bring an action on its own behalf.

Another of the amendments was to add to section 9.1 of the Act the following sentence:

"The board of managers [of the association] shall have standing to act in a representative capacity in relation to matters involving the common elements * * * on behalf of the unit owners * * *." Ill. Rev. Stat. 1979, ch. 30, par. 309.1.

United contends that the above two amendments show that plaintiffs do not have standing to bring this action. United argues that only the board of managers of the condominium association has standing to bring the present action on behalf of the association. In other words, United contends that since the plaintiffs are attempting to assert the rights of the association, the only time the plaintiffs would have standing to assert those rights is by means of a derivative action which could only arise if the board of managers has wrongfully refused to assert the association's rights. Since nothing in the record indicates that the board of managers has refused to bring an action, and since the board of managers has not brought an action on the association's behalf, the plaintiffs cannot bring such an action.

The difficulty with United's argument is the presumption that the plaintiffs are attempting to assert rights of the association rather than their own individual rights. The association does not own the common elements. The proposed class members own the common elements as tenants in common. These rights of ownership arose as a result of the individual contracts for sale between United and each individual buyer. There is no contract between the association and United creating an express warranty to repair defects in the common elements. There is no contract between United and the association out of which the implied warranty of habitability arose. In both cases, it is the contracts between United and the individual buyers that created these warranties.

■■ Hence, it is not the association's rights that are being asserted here but the contract rights of each individual purchaser of the condominium units. If anything, it is the association who would have no standing in this action but for the fact that the amendment to section 9.1 of the Condominium Property Act apparently gives the association standing to assert the unit owners' rights in the common elements. We find nothing in the Condominium Property Act that indicates an intent on the part of the legislature to transfer the unit owners' contract rights to the condominium association.

■■ Hence, we hold that plaintiffs have standing to bring this action. This conclusion is not defeated by the mere fact that the manner in which

the plaintiffs are required to pay for repairs to the common elements involves the procedural steps of the association making the repairs and then assessing the costs of such repairs to the plaintiffs and the proposed class members.

Accordingly, for the reasons noted, we reverse the order of the trial court dismissing counts I and IV of the amended complaint and remand for further proceedings.

Reversed and remanded.

JOHNSON and JIGANTI, JJ., concur.