H. MURRAY HERLIHY et al., Plaintiffs-Appellants, v. DUNBAR BUILDERS CORPORATION et al., Defendants-Appellees.

First District (3rd Division)    No. 79-1238

Opinion filed December 31, 1980.

Howard C. Emmerman, of Chicago (Rudnick & Wolf, of counsel), for appellants.

Arvey, Hodes, Costello & Burman, of Chicago (Gary David Friedman and Donald I. Resnick, of counsel), for appellees.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiffs, unit owners of apartments in a condominium building, brought this class action against defendants, Dunbar Builders Corporation, Dunbar Corporation, and Dunbar Construction, Inc., seeking damages for alleged construction defects in certain common elements of the structure. Plaintiffs sought recoveries under the theories of breach of contract (count I), breach of an express and implied warranty (count II), and negligence (count III). (Count IV, which requested a mandatory

injunction, was stricken and is not involved in this appeal.) The trial court granted partial summary judgment in favor of defendants on count II as to those matters concerning implied warranties and on count III. The court subsequently denied plaintiffs' motion to reconsider and vacate the order allowing partial summary judgment. The court also found that there was no just reason to delay enforcement or appeal of its orders.

The pleadings reveal the following pertinent facts: The named plaintiffs are original purchasers of condominium apartments in the Malibu Condominium, a 356 unit, high-rise building located in Chicago. Plaintiffs are also members of the Malibu Condominium Association, which governs, manages and administers the building. Dunbar Corporation, the successor in name to Dunbar Builders Corporation, is the developer-vendor of the Malibu. Dunbar Constructors Incorporated, a wholly owned subsidiary of Dunbar Corporation, is the general contractor.

During the years 1967 through 1969, plaintiffs purchased their apartment units from Dunbar Builders Corporation pursuant to standard form contracts. Each contract provided, in relevant part, as follows:

"WARRANTY

Seller shall deliver to Buyer at closing a certificate of warranty * * * covering construction of the Apartment Unit and Common Elements.
* * *"

A purported disclaimer in the contract read:

"NOTICES—REPRESENTATIONS
* * *

No representations, warranties, undertakings or promises other than those expressed herein whether oral, implied or otherwise shall be considered part of this transaction."

At the closing, each purchaser received a certificate of warranty containing the following express warranty:

"DUNBAR BUILDERS CORPORATION warrants the workmanship and material in the apartment Unit for a period of one year from the date of tender of possession against defects arising out of faulty workmanship or material or failure substantially to comply with the plans and outline specifications described in your Purchase Contract. This warranty shall also apply to the Common Elements for a period of one year from the date that the first apartment Unit becomes occupied.

Dunbar shall correct defective work within a reasonable time after notice in writing is received during the warranty period. Such notification shall follow Dunbar's customer service policy. Latent defects are hereby defined as those defects which are not apparent upon substantial completion of the apartment Unit but become apparent within one year after such completion, or, in the case of

the Common Elements, which become apparent within one year after completion of the affected portion of the Common Elements."

On October 1, 1973, plaintiffs brought the present action against defendants on behalf of themselves and all similarly situated owners of units in the Malibu. The class was later limited to parties who were original purchasers from the defendant developer.

In count I of their amended complaint, plaintiffs charged that, in violation of the duties and obligations imposed upon defendants by the contracts of purchase, defendants failed to construct the building in conformity with applicable plans, specifications, and industry standards. Among the alleged construction defects set forth were the following: corroding balcony concrete; cracking driveway pavement; crumbling retaining walls; unsafe anchoring of balcony railings; structurally defective concrete pedestrian ramp, loading dock, and stairs; improper and deficient caulking of windows, frames, sills, and balcony doors to control water leaking; improper tuck-pointing to eliminate water seepage; and inadequate heating, cooling and ventilation systems in the laundry room and other common elements. Plaintiffs alleged that, despite repeated demands, defendants refused to fulfill their contractual obligation to remedy the alleged defects. As a result of such noncompliance, plaintiffs would be required to expend large sums of money to cure material defects and repair structural insufficiencies.

Count II incorporated by reference the allegations contained in the previous count and alleged further that by reason of the sales contracts and relationship between the parties, defendants warranted, expressly and by implication, as follows: that plans and specifications would be followed; that substitutions would incorporate materials of similar quality, strength or durability; that the building would be free of substantial defects in design and construction; and that the structure would be built in conformity with applicable ordinances and accepted standards of construction. Plaintiffs maintained that the numerous defects, inadequacies, substandard conditions and material failures in the building resulted from the breach of defendants' express and implied warranties to plaintiffs.

In count III plaintiffs further charged that the defects, faults, insufficiencies, and inadequacies were the direct and proximate result of defendants' negligent and careless conduct in constructing the building.

After defendants filed an answer denying the material allegations of the amended complaint, Dunbar Corporation filed its motion for partial summary judgment. It maintained that the certificate of warranty contained the only express warranty extended to plaintiffs, that language in the sales contract effectively disclaimed any implied warranties, and that plaintiffs could not recover for any alleged breach of warranty involving common elements where such alleged breach was not brought to Dunbar

Corporation's attention within one year from the date the first unit became occupied. Dunbar Corporation also argued that its relationship with plaintiffs was strictly contractual, that its sole duties and obligations to plaintiffs arose from the sales contracts, and that it could not be held liable for negligent construction. In a separate motion for summary judgment the remaining defendants asserted that in 1972, Dunbar Builders Corporation, by amendment of its articles of incorporation, was merged into Dunbar Corporation, and that there was no privity or contractual relationship between Dunbar Constructors Incorporated and any of plaintiffs.

Having considered the pleadings, memoranda and arguments of counsel, the trial court found, as a matter of law, that the disclaimer language in the sales contract precluded plaintiffs from maintaining an action predicated on any implied warranty, and that plaintiffs could not recover economic damages under a tort theory of liability in the absence of physical damage to other property or persons. Accordingly, the trial court granted summary judgment in favor of defendants on count III and on count II as to all matters involving implied warranties. Summary judgment on count I was denied; allegations in count II pertaining to breach of contract or breach of express warranties were deemed incorporated in count I. The court denied the separate motion for summary judgment, finding that there existed issues of material fact concerning events resulting in the corporate name change and whether the developer and contractor could be dealt with as a single entity. The court subsequently denied plaintiffs' motion to reconsider and vacate its order granting partial summary judgment, further concluding that the allegations of the amended complaint, even if true, did not bring the building within the scope of an implied warranty of habitability.

On appeal plaintiffs first contend that the trial court erred in finding that the allegations of the complaint did not bring the building within the scope of an implied warranty of habitability. Plaintiffs urge that the allegations of construction defects in common elements sufficiently describe conditions which, if proved, would constitute a breach of an implied warranty of habitability. Defendants counter that the implied warrant of habitability does not extend to the present situation because the alleged defects are in common elements and do not render the units unfit for habitation or for their intended use as a residence; plaintiffs bargained for and received an express warranty; and plaintiffs took title and resided in the building for some time without seeking damages.

We initially must consider whether an implied warranty of habitability may attach to the sale of a new condominium by a developer and whether such warranty may extend to defects in common elements of a condominium.

In *Petersen v. Hubschman Construction Co.* (1976), 76 Ill. 2d 31, 389 N.E.2d 1154, our supreme court held, as a matter of public policy, that in the sale of a new home by a builder-vendor there is an implied warranty of habitability which will support an action against the vendor by the vendee for latent defects. Implied in the contract of sale is a warranty that the house, when completed and conveyed to the vendees, will be reasonably suited for its intended use; the mere fact that the house is capable of being inhabited does not satisfy the implied warranty.

Expanding upon *Petersen*, this court, in *Tassan v. United Development Co.* (1980), 88 Ill. App. 3d 581, 410 N.E.2d 902, held that a developer-seller of a condominium could be deemed to have made an implied warranty of habitability. In *Tassan*, as in the present case, owners of units in a newly constructed condominium alleged that the developer-seller breached an implied warranty of habitability by refusing to repair certain defects in common elements of the building. Relying on *Petersen*, the court noted that the fundamental reason for requiring the implied warranty of habitability to attach to the sale of new homes by a builder-vendor is the unusual dependency of the vendee upon the vendor. It reasoned that purchasers from a developer-seller of a condominium similarly depend upon the vendor's ability to construct and sell a building of sound structure, and have no control over the choice of a builder.

■■ We believe the reasoning underlying the *Petersen* and *Tassan* decisions is sound and applicable to the present case. Purchasers of condominium units, just as buyers of single family residences, often are not knowledgeable in construction practices and must, to a substantial degree, rely upon the integrity and skill of the developer-vendor. Condominium purchasers are unlikely to be in any better position than home buyers to inspect the premises for latent defects. (*Petersen v. Hubschman Construction Co.*) Accordingly, we conclude that an implied warranty of habitability arises from the sale of a new condominium to an original purchaser by a developer-vendor. See *Greentree Condominium Association, Inc. v. RSP Corp.* (1980), 36 Conn. Super. 160, 415 A.2d 248; *Gable v. Silver* (Fla. App. 1972), 258 So.2d 11, *aff'd* (Fla. 1972), 264 So.2d 418.

■■ We next consider whether such warranty may extend to common elements. Common elements are all portions of the property except the individual units. (Ill. Rev. Stat. 1979, ch. 30, par. 302(e).) Each unit purchaser owns an undivided interest in the common elements. Plaintiff's amended complaint alleged construction defects in such items as: balconies and railings; pedestrian ramps; caulking of windows, frames and balcony doors; tuck-pointing; and cooling, heating and ventilation systems. Defects in such shared portions of the building may be found to interfere with a purchaser's legitimate expectation that the structure be reasonably suited for its use as a residence. (See *Gable v. Silver*; see

generally *Tassan v. United Development Co.*) We therefore find that the implied warranty of habitability may attach to common elements.

■■ The implied warranty of habitability, of course, covers only latent defects. (*Petersen v. Hubschman Construction Co.*) Whether a defect is latent is generally a question of fact. (*Tassan v. United Development Co.*) From the allegations of plaintiffs' complaint, we cannot say that the only reasonable conclusion is that these defects were patent. Thus, whether or not the defects complained of were latent remains a genuine issue of material fact.

■■ We reject defendants' contention that the express warranty covering the common elements contained in the certificate of warranty precludes or limits the scope of an implied warranty. The implied warranty of habitability is a separate covenant between the vendor and vendee which arises because of the unusual dependent relationship. (*Petersen v. Hubschman Construction Co.*) In *Tassan v. United Development Co.*, this court explicitly held that a one-year express warranty covering the same defects as the implied warranty of habitability should not displace or render that implied warranty nonactionable. The court reasoned that to hold otherwise could have the effect of allowing a seller to disclaim the implied warranty without proving there is a knowing disclaimer.

Defendants urge that the implied warranty of habitability is inapplicable here inasmuch as plaintiffs owned and resided comfortably in their units for some time before seeking damages for the alleged defects. In *Petersen v. Hubschman Construction Co.*, our supreme court did not decide the appropriate remedy for a purchaser where latent defects are not discovered until after delivery of the deed. The record before us does not reveal when all the defects in question appeared or were discovered. The pleadings reflect that the defects were reported to defendants from 1970 to 1973. In any event, the trial court never reached this issue, and it would be inappropriate to address it at this stage of the proceedings.

Plaintiffs also contend that the trial court erred in ruling that the aforementioned disclaimer language in the sales contract precluded plaintiffs, as a matter of law, from maintaining an action predicated upon any implied warranties. Defendants urge that the language in question was clear, concise, conspicuous and unambiguous, and that viewed in conjunction with the express warranty, it was sufficient to apprise plaintiffs of what they were waiving.

■■ While a knowing disclaimer of the implied warranty of habitability does not offend or violate public policy, such disclaimer must be strictly construed against the developer-vendor. (*Petersen v. Hubschman Construction Co.; Tassan v. United Development Co.*) An implied warranty of habitability, which is implied by law for the protection of consumers, is a matter of public policy and should not be considered waived except by

clear and specific language. (See *Conyers v. Molloy* (1977), 50 Ill. App. 3d 17, 364 N.E.2d 986.) The party seeking the benefit of the disclaimer must not only show a conspicuous provision fully disclosing the consequences of its inclusion but also that such was in fact the agreement reached. (*Petersen v. Hubschman Construction Co.,* citing from *Crowder v. Vandendeale* (Mo. 1978), 564 S.W.2d 879.) The vendor has the burden of proving that the buyer knew that the implied warranty did not attach to the sale of the new building; any disclaimer clause would be evidence to support such allegation. *Tassan v. United Development Co.*

■■ In *Tassan,* this court found a clause very similar to the one before us insufficient to show, as a matter of law, that the implied warranty of habitability was effectively disclaimed. As in *Tassan,* the disclaimer language in dispute here is located near the end of a standard form contract in the same print size and type as other clauses; does not mention or refer to a warranty of "habitability"; and does not explain the consequences of the disclaimer. In view of these facts, we cannot say, as a matter of law, that the clause was sufficient to disclaim the implied warranty of habitability. Since there is a genuine issue of material fact as to whether the implied warranty of habitability was knowingly disclaimed, allowance of summary judgment on count II in favor of defendants was improper.

Plaintiffs finally contend that the trial court erred in ruling that plaintiffs could not recover economic damages under the tort theory and thus improperly granted summary judgment on count III in favor of defendants Dunbar Corporation and Dunbar Builders Corporation. Plaintiffs do not contest the ruling insofar as it concerns Dunbar Constructors Incorporated.

■ In *Alfred N. Koplin & Co. v. Chrysler Corp.* (1977), 49 Ill. App. 3d 194, 364 N.E.2d 100, this court held that a tort theory does not extend to permit recovery against a manufacturer for solely "economic losses" absent property damage or personal injury resulting from the use of the product. In the present case, plaintiffs seek to recover for purely economic losses; no property damage or personal injury is alleged. Plaintiffs attempt to distinguish the *Koplin* decision by urging that, unlike the remote manufacturer, the two corporations here are in privity with plaintiffs. The reasoning underlying the *Koplin* decision, focused, however, upon the demarcations and distinctions between legal principles embodied in tort and contract law, not upon privity or lack of privity between the parties. Moreover, this court has held that where the parties are in privity and no personal injury is involved, recovery of economic losses should be governed by the law of warranty, not tort. (See *Fireman's Fund American Insurance Co. v. Burns Electronic Security Services, Inc.* (1980), 93 Ill. App. 3d 298; *Album Graphics, Inc. v.*

*Beatrice Foods Co.* (1980), 87 Ill. App. 3d 338, 408 N.E.2d 1041.) We conclude that plaintiffs may not recover purely economic damages under a tort theory of liability. Accordingly, the trial court properly entered summary judgment on count III in favor of all defendants.

For the reasons stated, the order of the circuit court of Cook County granting summary judgment in favor of defendants on count III is affirmed. The order granting partial summary judgment in favor of defendants on count II is reversed and the cause is remanded for further proceedings consistent with the holdings of this opinion.

Affirmed in part; reversed and remanded in part.

SULLIVAN and RIZZI, JJ., concur.