BRIARCLIFFE WEST TOWNHOUSE OWNERS ASSOCIATION, Plaintiff-Appellant, *v.* WISEMAN CONSTRUCTION COMPANY, Defendant-Appellee.

Second District No. 82—771

Opinion filed September 19, 1983.

John B. Kincaid, of Mirabella & Kincaid, of Wheaton, for appellant.

Gary L. Taylor, of Rathje, Woodward, Dyer & Burt, of Wheaton, for appellee.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The principal issue is whether a homeowner's association which holds title to common land in a planned unit development may maintain an action for breach of an implied warranty of fitness of the common land, in which the homeowners possess easements. The plaintiff, Briarcliffe West Townhouse Owners Association, a not-for-profit corporation (Association), appeals from the order granting the motion of Wiseman Construction Company (Developer) for a directed verdict as to count I of the third amended complaint on the basis that the Association lacked standing.

The Developer cross-appeals from the trial court's judgment in favor of the Association as to count II of the third amended complaint.

I

The Developer purchased land adjoining the city of Wheaton, entered into annexation and subdivision agreements with the city, subdivided the land, and sold townhouses to various purchasers with accompanying easements, party wall rights and covenants, as set forth in the Declaration. The Declaration provided in essence that the Developer would convey described common land to the Association to be managed for the benefit of the homeowners, that each homeowner would have an easement to use the common land and would be a member of the Association, and that the Association could assess members to pay for the maintenance, capital improvements, and unforeseen expenses of the common land. In October 1976, the Developer conveyed the common land to the Association by quitclaim deed.

The Association proceeded to trial on its third amended complaint. That complaint alleged in count I that the Developer designed and fashioned the topography of the development, and impliedly warranted to the Association and individual members of the Association that the townhouses and drainage systems were habitable and fit for their intended use; that serious and continuous storm drainage problems occurred and were brought to the Developer's attention but that corrective action had not been taken; and that the common areas have retained and held surface storm water, resulting in substantial damage.

At the close of the Association's case, the court granted the Developer's motion for a directed finding on count I, finding that the As-

sociation did not have standing to bring an action under the implied warranty of habitability theory.

## A

 It is now clear that an implied warranty of habitability may extend to a subsequent purchaser who discovers a latent defect within a reasonable time after the purchase of a home even though the party is not in privity with the original developer/builder. (*Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 183.) Defendant initially argues that there can be no implied warranty of habitability to vacant common land. We cannot agree. There may be circumstances in which a latent defect in the common land can affect the habitability of the living quarters. This has been recognized in *Tassan v. United Development Co.* (1980), 88 Ill. App. 3d 581, 584 (in which one of the defects claimed was "[t]here was inadequate drainage of the surface waters in front of the building"); *Kramp v. Showcase Builders* (1981), 97 Ill. App. 3d 17, 21 (defects in the septic system). See also *Park v. Sohn* (1980), 90 Ill. App. 3d 794, 798, *aff'd* (1982), 89 Ill. 2d 453, as here material (faulty septic system and drain tiles).

█ Under the terms of the purchase agreement, the Declaration was to be delivered to the purchaser of a townhouse together with the deed. The townhouse purchaser under his contract agreed to subscribe to membership in the Association and to comply with the Declaration, and agreed to be bound by the covenants and restrictions contained in the Declaration. The Declaration stated the purpose to create a community consisting of the townhouses and the common facilities and to promote and enhance the value of the amenities in the community. We perceive no real distinction between the buildings and the common land in the application of the public policy protecting a purchaser of a new or reasonably new home from latent defects in the building or the required amenities since the purchaser in a substantial degree must rely in either case on the expertise of the building-vendor creating the defect. See *Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 183.

## B

The basic issue then becomes whether the Association has standing to enforce an implied warranty of habitability either in its own right as owner of the common land, as third-party beneficiary of the contract between the Developer and the homeowners, or as a representative of the homeowners.

█ The doctrine of "standing" requires the party bringing suit to

allege an injury to a legally protected interest, so that the court may decide only specific controversies. (See, *e.g., Hill v. Butler* (1982), 107 Ill. App. 3d 721, 725; *Lynch v. Devine* (1977), 45 Ill. App. 3d 743, 747-48.) What amounts to a legally protected interest has been given an increasingly broad interpretation. See *Maiter v. Chicago Board of Education* (1980), 82 Ill. 2d 373, 381 (community organization had "enforceable and recognizable right" to participate as local nominating committee for selection of school principals and had standing to intervene in suit brought by school principals against the Board); *De Witt County Taxpayers' Association v. County Board* (1983), 112 Ill. App. 3d 332, 335 (taxpayers association could maintain action on behalf of taxpayers of the county who are members of the association).

In determining whether the Association has the necessary legally protected interest in the litigation, we must consider the purport of the homeowners purchase agreements, the effect of the quitclaim deed of the common lands to the Association, and the declaration of covenants, conditions and restrictions for Briarcliffe West which were made a part of the purchase agreements and to which their individual deeds were subject. The entire scheme of marketing the townhouses included not only the sale of the buildings but the assurance in the sales contract that the common areas would be deeded to the not-for-profit corporate association of which the townhouse owners would be members, thus insuring them the beneficial enjoyment of the common areas in connection with their homes.

The Developer argues that the plaintiff Association is neither a vendee nor subsequent vendee and is thus not afforded the protection of the implied warrant of habitability and that the declaration does not confer standing to maintain a suit for the breach of the owners' contract rights, nor give the Association a right to claim as a direct beneficiary of the individual contracts between the Developer/builder and the homeowners. The Developer's theory, adopted by the trial court, would create what, to our mind, is an untenable dilemma to the purchasers of the townhouses and their real interests. The Developer suggests in its brief that the townhouse owners may "arguably, perhaps" maintain a suit for breach of implied warranty of habitability but that they are not before the court. We note parenthetically that they are not before the court in their own right because an earlier motion judge found standing in the Association and when, at the trial and upon the close of the Association's case, the trial court found lack of standing, it refused to permit the filing of a complaint on behalf of the townhouse owners as a class. Moreover, there is some question, which the Developer also suggests, but which is not directly before us,

whether the townhouse unit owners can claim an implied warranty of habitability with reference to the common areas based on their ownership of mere easements in them. Similarly, the Association, as recipients of title by a quitclaim deed may also be thwarted in charging damage to their direct interests in the common land.

In effect, the Developers are arguing that because of the way in which the development was documented there is no one who can effectively claim the benefit of an implied warrant of habitability as to the common land. We are not persuaded that the method of separating the ownership of building and common lands should be allowed to undercut the public policy stated in *Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 183, which was evolved to protect purchasers of new houses upon discovery of latent defects, by requiring that such defects be cured by the builder or developer who had created them.

■ We conclude under the particular circumstances of this case that the Association has standing to sue as a representative of the individual townhouse owners. Count I of the third amended complaint contains the allegation that the Association holds title for the common use and enjoyment of its members who are owners of the townhouses, that the Developer/builder impliedly warranted to the Association and to its individual members that the townhouses and the storm sewer drainage system were habitable and fit for the intended use of the same, that the development was free from latent defects but that serious and continuous storm drainage problems were brought to the attention of the Developer, which refused to correct or reconstruct them, resulting in the retention of surface storm water in the common areas and necessitating the construction of subsurface storm water drainage, with damages in the sum of $36,704.45. The Association has thereby stated under general common law principles representational standing to assert the rights of its individual members since it has alleged an immediate, direct and substantial injury to any one of them. (*1000 Grandview Association v. Mt. Washington Associates* (1981), 290 Pa. Super. 365, 368, 434 A.2d 796, 797-98.) In *Grandview*, as here, the Association was a nonprofit corporation comprised of all unit owners of a residential condominium property. The court found that the Association had standing, despite a lack of statutory authorization, to sue for breach of express and implied warranty. While agreeing that the Association had not alleged injury to its status as the decision-making body representing the individual unit owners, the court concluded that the Association had alleged a direct injury to the interests of its members by stating that the Developer had failed to comply with its implied and express warranties for the common areas

resulting in, among other things, cracked masonry, water leakage, a defective sewage pump and the like. (See also *Greentree Condominium Association v. RSP Corp.* (1980), 36 Conn. Supp. 160, 163, 415 A.2d 248, 250.) In *Greentree,* the court noted that the Association was formed by the unit owners in accordance with a declaration of condominium and in accordance with its bylaws which charged the Association with the management, operation, care and upkeep of the common areas. The court noted that the Developer

> " 'gave an implied warranty to unit owners and to Greentree Condominium Association, Inc., itself and/or as a third party beneficiary that the condominium units, common areas and facilities and improvements purchased by said unit owners from RSP Corporation and built by the defendants would be constructed and erected in a competent and workmanlike manner *** '

> From those admitted facts the conclusion is inescapable that the association has standing, either directly or in a representative capacity, to maintain this action for the protection of the interests of the unit owners in pursuance of its obligations under the by-laws." 36 Conn. Supp. 160, 163, 415 A.2d 248, 250.

While we recognize that both of these cases involve condominiums whereas the record in this case does not show compliance with Illinois condominium law, in both cases there was no statutory authority for the condominium association to sue on behalf of the owners, unlike the Illinois statute. (See Ill. Rev. Stat. 1981, ch. 30, par. 309.1. See also *Doyle v. A & P Realty Corp.* (1980), 36 Conn. Supp. 126, 128, 414 A.2d 204, 205.) In *Doyle,* the allegations that the Association had a contractual duty to maintain the project, and that there were damages in the form of increased maintenance costs because of alleged construction and design deficiencies were held to show a direct and substantial interest to the Association, providing standing to proceed.

In *Maiter v. Chicago Board of Education* (1980), 82 Ill. 2d 373, 382, the Illinois Supreme Court noted that "an organization has standing to assert the concerns of its constituents." In *De Witt County Taxpayers' Association v. County Board* (1983), 112 Ill. App. 3d 332, 334-35, the court found that a taxpayers' association, although not itself a taxpayer, was entitled to assert the rights of its constituent members who were taxpayers. Under the facts before us, the Association should have been allowed to represent the interests of its constituent members, the homeowners. This is true particularly because the homeowners, although directly interested, may not have had a complete remedy in their own right, and, in any event, were denied

participation.

The Developer cites *American Federation of Technical Engineers v. La Jeunesse* (1976), 63 Ill. 2d 263, 265-66, for the proposition that an *unincorporated* association cannot sue in a representative capacity in an action at law absent legislative authority. *La Jeunesse* proceeded on the premise that at common law "an unincorporated association has no separate legal existence independent of the members who compose it." Here the Association is incorporated and its members are the clearly ascertainable homeowners.

The Developer places substantial reliance on *Tassan v. United Development Co.* (1980), 88 Ill. App. 3d 581, to support its argument that there is no contract between the Developer and the Association which could create the implied warranties claimed. In *Tassan*, the suit commenced as a class action by condominium unit owners, who owned both the homes and the common areas, for breach of an implied warranty of habitability of the individual homes and common areas; and the Developer defended on the grounds that the Association rather than the condominium owners was the proper party to assert the breach of a warrant of habitability. The court concluded that it was the unit owners' contract rights which were being asserted, with no showing of a contract between the Developer and the Condominium Association which could create the warranty. Defendant relies principally on the statement in *dicta*:

> "If anything, it is the association who would have no standing in this action but for the fact that the amendment to section 9.1 of the Condominium Property Act apparently gives the association standing to assert the unit owners' rights in the common elements." (*Tassan v. United Development Co.* (1980), 88 Ill. App. 3d 581, 596.)

We do not accept the quoted *dicta* in *Tassan* as applicable to the allegations in count I of the complaint before us for the reasons we have previously stated.

The trial court dismissed count I of the third amended complaint solely on the issue of standing without reaching the merits of the proof offered by the Association. In our finding that the Association has standing we, of course, express no opinion as to whether it has proved a breach of the implied warranty of habitability and is entitled to the claimed damages. In the view we have taken, we do not reach the Association's additional claims that the trial court erred in denying its request to file further amended complaints which also would have added the townhouse owners as additional parties.

## C

■ We also find no merit in the Developer's argument that the action is barred by the statute of limitations. Defendant's motion to dismiss was on the basis that the common area was conveyed to the Association by quitclaim deed on October 5, 1976, and the original complaint was not filed until May 9, 1980, contrary to the two year limitation period contained in section 21.3 of the Limitations Act (Ill. Rev. Stat. 1981, ch. 83, par. 22.3). As the Association notes, the statute was not effective until November 29, 1979, and has no retroactive application to the Developer's planning and design of the project which took place between the years 1974 through 1976. (See Ill. Rev. Stat. 1981, ch. 110, par. 13—214(e).) The five-year statute of limitations applicable to an implied warranty of habitability begins to run when the structure or development is completed. (*Altevogt v. Brinkoetter* (1981), 85 Ill. 2d 44, 50.) As to the common area it was deeded to the Association on October 5, 1976. Thus, the suit filed on May 9, 1980, was within the five-year statute of limitations.

## D

■ The Developer further argues that the implied warranty of habitability has been waived as a matter of law by express warranty and waiver provisions in paragraph 5 of the purchase agreement. In substance, it provides that all construction work is to be done in a workmanlike manner in accordance with plans and specifications, and that seller warrants the workmanship and material for a period of one year after tender of possession of the premises with the further language:

> "*** WARRANTIES ARE GIVEN IN LIEU OF ANY OTHER WARRANTIES, EXPRESSED OR IMPLIED, AND ALL SUCH WARRANTIES INCLUDING WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE ARE HEREBY EXCLUDED."

This claim was not interposed as a defense in the trial court and cannot be raised for the first time on appeal. See, *e.g., Snow v. Dixon* (1977), 66 Ill. 2d 443, 453.

## II THE CROSS-APPEAL

■ Count II of the third amended complaint alleged that in March 1978, the Developer was in control of the water distribution system, that a water main under its control broke, that pursuant to the declaration, annexation agreement and subdivision improvement agreement, the Developer obligated itself to maintain the water distri-

bution system until it was accepted by the city. The acceptance had not occurred until May 15, 1980, and as a result the Association had to pay for its repair. The Association also alleged that it was a third-party beneficiary of the Developer's declaration and of the Developer's agreement with the city of Wheaton concerning the subdivision, specifically the annexation agreement and the subdivision improvement agreement. After the Developer rested without presenting any evidence, the court found in favor of the Association. The trial court agreed that the Association was a third-party beneficiary and awarded it damages for the break of a water main which was part of the water distribution system for the townhouses. In its cross-appeal, the Developer argues that the Association was not a third-party beneficiary to any of the documents so as to permit it to bring this cause of action.

We first reject the Association's claim that the issue is moot because of the Developer's payment of the judgment. The payment of a judgment does not preclude that party from appealing from the judgment. *Pinkstaff v. Pennsylvania R.R. Co.* (1964), 31 Ill. 2d 518, 523; *First National Bank v. Road District No. 8* (1945), 389 Ill. 156, 161-62; *Richter v. Collinsville Township* (1981), 97 Ill. App. 3d 801, 804.

We also agree with the Developer that the declaration does not give the Association any rights as a third-party beneficiary. It merely provides that the Developer retains legal title to the common area and facilities until the Association is able to maintain them. We also agree with the Developer that the annexation agreement between the city of Wheaton, the Developer and owners of certain land to be purchased by the Developer also does not give the Association rights as third-party beneficiary because by its terms the agreement expired on February 3, 1971, prior to the deed to the Association.

We do conclude, however, that the subdivision improvement agreement dated January 23, 1972, between the city and the Developer to insure the completion of public improvements gives the Association third-party beneficiary status. In that agreement the Developer guaranteed the workmanship and material of its public improvements for one year after final acceptance by the city. The agreement required defendant to make any necessary repairs and placed the responsibility for the maintenance of the improvements on the Developer until final acceptance by the city. These improvements included the water distribution system. Since the city did not accept the system until after the break had occurred, the duty was upon the Developer to repair the broken main.

The Developer claims that the Association failed to show

that the Agreement relates to the area encompassing the broken main but we find the record to the contrary. Also, the Developer claims that the Association does not have third-party beneficiary status because it had not been incorporated at the time the agreements were made and thus was not intended to benefit. The fact that the Association had not been incorporated at the time the agreements were entered into does not require the conclusion that the Association was not an intended beneficiary. A third-party beneficiary need not be identified by name but may be described as a member of a class. (*Altevogt v. Brinkoetter* (1981), 85 Ill. 2d 44, 55-56.) The Association, being charged with the duty of repairing and maintaining facilities, is a third-party beneficiary of the contract which allocated that duty to the Developer until the system was accepted by the city.

This court's opinion in *Kravitz v. County of Lake* (1978), 62 Ill. App. 3d 101, supports a finding that the Association had third-party beneficiary standing. In *Kravitz*, the county purchased from the developer the water works which served the developer's land by a contract in which the county agreed not to charge a connection fee to lots of the developer. The plaintiffs purchased lots from the developer and were told that they would not have a water connection fee. The county, however, charged them a fee and they brought suit against the county. This court held that they had standing as third-party beneficiaries because they would derive a direct benefit from the county's promise not to charge a fee. (62 Ill. App. 3d 101, 105.) Similarly, in the instant case, the allocation of the duty to maintain the water mains found in the Agreement gives a direct benefit to the Association.

The judgment as to count I of the third amended complaint is reversed and the cause is remanded for proceedings consistent with this opinion. The judgment based on count II is affirmed.

Reversed in part and remanded, affirmed in part.

NASH and VAN DEUSEN, JJ., concur.