BRIARCLIFFE WEST TOWNHOUSE OWNERS ASSOCIATION, Plaintiff-Appellee, v. WISEMAN CONSTRUCTION COMPANY, Defendant-Appellant.

Second District   No. 84—0404

Opinion filed June 25, 1985.—Rehearing denied August 6, 1985.

Gary L. Taylor, of Rathje, Woodward, Dyer & Burt, of Wheaton, for appellant.

John B. Kincaid, of Mirabella & Kincaid, of Wheaton, for appellee.

JUSTICE STROUSE delivered the opinion of the court:

This action was instituted by plaintiff, Briarcliffe West Townhouse Owners Association, on behalf of its members for breach of an implied warranty of habitability of common land. This court previously conferred standing on plaintiff to bring such an action. See *Briarcliffe West Townhouse Owners Association v. Wiseman Construction Co.* (1983), 118 Ill. App. 3d 163.

On remand to the trial court, additional evidence was presented, and the court entered judgment for plaintiff and against defendant in the amount of $25,443.03 plus costs. Defendant appeals.

The defendant, Wiseman Construction Company (Wiseman), is the developer of a planned unit development in Wheaton called Briarcliffe West Townhomes. The townhomes and lots were conveyed to individual owners and, in October 1976, Wiseman conveyed by quitclaim deed the common land to the plaintiff, Briarcliffe West Townhouse Owners Association (association), a not-for-profit corporation. The declaration of covenants granted the homeowners an easement to use the common elements.

The association proceeded to trial on its third amended complaint. Count I of the complaint alleged that Wiseman impliedly warranted to the association and individual members of the association that the townhouses and drainage systems were habitable and fit for their intended use; that serious and continuous storm drainage problems occurred and were brought to Wiseman's attention, but that corrective action had not been taken; and that the common areas have retained and held surface storm water, resulting in substantial damage. Count II of the complaint alleged that in March 1978, Wiseman was in control of the water distribution system when a water main broke; that, pursuant to the declaration, annexation agreement and subdivision improvement agreement, Wiseman was obligated to maintain the water distribution system until it was accepted by the city, which acceptance did not occur until May 1980; and that the association had incurred repair costs of $2,473.29.

At the close of the association's case, the trial court granted Wiseman's motion for a directed finding on count I, concluding that the association did not have standing to bring an action under the theory of implied warranty of habitability. The association appealed this order and this court reversed, holding that the association had standing to sue for breach of an implied warranty of fitness of the common land. See *Briarcliffe West Townhouse Owners Association v. Wiseman Construction Co.* (1983), 118 Ill. App. 3d 163, 169.

On remand to the trial court, Wiseman obtained leave of court to file its sixth affirmative defense asserting that the implied warranty of habitability was disclaimed by paragraph 5 of the purchase agreements, and, in the alternative, that Wiseman has effectively limited the remedy to an action on the express warranty. The bench trial resumed on March 15, 1984, with Wiseman presenting its case in chief.

On April 4, 1984, the trial court entered judgment in favor of the association and against Wiseman for $25,443.03, plus costs. The court also entered judgment in favor of the association on the affirmative defenses.

Wiseman first argues that the association failed to prove a breach

of the implied warranty of habitability. Its position, absent citation of authority, is that the determination as to whether a breach occurred must be based on the subdivision as a whole and not merely the condition of the common areas. Wiseman stresses that there are no defects in any of the 201 townhouses built or the numerous improvements to them, that the drainage is generally adequate, and that the vast majority of the common land is not even involved in this litigation.

This court has already determined, in the previous appeal of this case, that an implied warranty of habitability can apply to vacant common land. We stated:

> "Defendant initially argues that there can be no implied warranty of habitability to vacant common land. We cannot agree. There may be circumstances in which a latent defect in the common land can affect the habitability of the living quarters. This has been recognized in *Tassan v. United Development Co.* (1980), 88 Ill. App. 3d 581, 584 (in which one of the defects claimed was '[t]here was inadequate drainage of the surface waters in front of the building'); *Kramp v. Showcase Builders* (1981), 97 Ill. App. 3d 17, 21 (defects in the septic system). See also *Park v. Sohn* (1980), 90 Ill. App. 3d 794, 798, *aff'd* [*in part, rev'd in part*] (1982), 89 Ill. 2d 453, as here material (faulty septic system and drain tiles).
>
> * * * We perceive no real distinction between the buildings and the common land in the application of the public policy protecting a purchaser of a new or reasonably new home from latent defects in the building or the required amenities since the purchaser in a substantial degree must rely in either case on the expertise of the building-vendor creating the defect. [Citation.]" *Briarcliffe West Townhouse Owners Association v. Wiseman Construction Co.* (1983), 118 Ill. App. 3d 163, 167.

■ The implied warranty of habitability, as announced by our supreme court in the landmark case of *Petersen v. Hubschman Construction Co.* (1979), 76 Ill. 2d 31, requires the builder-vendor to provide a residence which is "reasonably suited for its intended use." (76 Ill. 2d 31, 42.) This implied warranty is limited to latent defects which interfere with the purchaser's legitimate expectation that the house he is buying will be reasonably suited for a residence. (*Park v. Sohn* (1980), 90 Ill. App. 3d 794, 798, *aff'd in part, rev'd in part* (1982), 89 Ill. 2d 453; see *Petersen v. Hubschman Construction Co.* (1979), 76 Ill. 2d 31, 42.) Thus, we must consider whether the association presented sufficient evidence at trial to prove breach of the implied warranty of habitability.

■ At trial, plaintiff presented numerous witnesses who identified the problem areas and described the drainage problems at Briarcliffe West. Ronald A. Belbutowski testified that he was an officer of the Briarcliffe West Townhouse Owners Association when it was created in October 1975. In the spring of 1976, the existence of drainage problems in the area came to his attention. He identified eight particular problem areas, all part of the common elements, and he described the areas as containing standing water ("from a couple of inches deep to just soggy ground, depending upon weather conditions"), swamp grasses, and cattails. He testified that the water stood for two or three days after a rainy period, and that the problem areas remained until the association had them repaired. He further explained that, prior to Wiseman's conveyance of the common land to the association, the board made a visual inspection tour of the exterior areas of the property and prepared a "punch list" of the substandard items needing corrective action. The drainage problems were included in the list which was turned over to Wiseman.

Michael R. D'Addio, also a resident of Briarcliffe West and an officer of the association, testified that the board received numerous complaints from residents regarding the drainage problems, and that Wiseman was informed of these problems in 1976 when the board submitted the punch list. He described the problem area behind his residence as approximately 100 feet long and two or three feet wide, with three inches of standing water following a rainstorm. He further described other problem areas which contained algae and standing water at virtually all times, had an odor, and caused the grass to die. The water interfered with normal recreational activities in the common area. Their testimony was corroborated by Donna J. Baranko and Mary H. Blakeslee, both former Briarcliffe West residents, as well as Patrick W. Frazee, the association's managing agent.

Aloysius W. McGurr, Jr., Wheaton city engineer from 1970 through 1978, testified that the city engineering department reviewed the plans and specifications for the Briarcliffe West Townhomes. They complied with all city of Wheaton ordinances at that time. The department had been assigned to correct or cause the correction of backyard drainage swale problems between the rear sides of the buildings. In February 1976, McGurr sent a letter to Wiseman informing the company of standing water in areas of Briarcliffe West in an attempt to correct the drainage problems. In McGurr's opinion, the maximum length of time water should be permitted to stand in common areas such as those found in Briarcliffe West is 24 hours. If standing, visible water exists for more than 24 hours it creates health problems, such as becoming a

breeding ground for mosquitoes, and maintenance problems, such as prohibiting proper mowing of the lawn. His testimony was corroborated by Richard K. Murzyn, Wheaton city engineer since 1978.

John Kulczewski, assistant secretary of Wiseman in 1976, recalled receiving complaints from homeowners about drainage problems in the common areas. He also received several punch lists from Mr. Frazee which listed the drainage problems.

John C. Loos, a civil engineer and professor, testified that he was hired by the association in late 1977 for professional advice as to the common elements. After studying the area, Loos recommended the installation of a storm water inlet to repair the area. He proceeded to award the construction contract to the lowest drainage contractor bidder. After completion of the inlet installation, Loos observed excellent drainage in this area.

The association contacted Loos again in November 1979 to make a comprehensive study of the drainage problems of the entire area. Loos completed that work in 1980. Loos' testimony included a description of the seven remaining problem areas, the drainage found, and the solutions recommended.

In Loos' opinion, the drainage problems rendered the common area unuseable and hazardous for purposes of health and safety. The standing water could be a carrier for disease. Loos further opined that the ponding water was caused by the builders' lack of attention to fine detail and the failure to mass grade the area. He testified that the areas reworked were corrected and that there were no further complaints. Finally, in Loos' opinion, the common elements as a whole were built in a less-than-average standard.

Further corroboration was presented on rebuttal by Harold Rowdy and Douglas Austin, both Briarcliffe West homeowners.

Wiseman concedes that the judgment of the trial court can be reversed only if it is found to be against the manifest weight of the evidence. It then submits that the judgment of the trial court was "clearly erroneous" in that the trial court could not have concluded that the townhomes were not "reasonably suited" for their intended use.

Upon a careful review of the record, including the testimony of numerous Briarcliffe West residents and association officers, the Wheaton city engineers, the association's managing agent, and the engineer hired to correct the drainage problems, we conclude the association has presented sufficient evidence to prove breach of the implied warranty of habitability.

■ Defendant next contends that the implied warranty of habitability was effectively disclaimed. Paragraph 5 of the purchase agree-

ment is found on page two of a three-page contract and contains the disclaimer clause here in dispute. It provides:

"5. *Warranty.* Seller agrees that all construction work shall be done in a good and workmanlike manner substantially in accordance with the plans and specifications hereinabove referred to, and Seller warrants the workmanship and material in the unit for a period of one (1) year after the tender of possession of the premises against defects arising out of defective workmanship or material or failure substantially to comply with the plans and specifications. Seller shall correct such defects within a reasonable time after notice in writing during the warranty period. THESE WARRANTIES ARE GIVEN IN LIEU OF ANY OTHER WARRANTIES, EXPRESSED OR IMPLIED, AND ALL SUCH WARRANTIES INCLUDING WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE ARE HEREBY EXCLUDED. The remedies under this warranty shall be the only remedies available to Purchaser, and Seller shall not be responsbile [*sic*] for damages, incidental or consequential to a breach of these warranties."

Additionally, paragraph 14 of the purchase agreement provides:

"14. *Entire Agreement.* This contract constitutes the entire agreement between the parties. No representatives [*sic* representations?], warranties, undertakings or promises, whether oral implied or otherwise, can be made by either Seller or Purchaser to the other unless expressly stated herein or unless mutually agreed to in writing by the parties. All amendments, change orders, supplements or riders hereto, if any, shall be in writing and executed by both parties."

This is the last paragraph of the contract, located directly above the purchasers' signatures.

While our supreme court has recognized that a knowing disclaimer of the implied warranty of habitability does not offend public policy, it has held that such a disclaimer must be strictly construed against the builder-vendor. (*Petersen v. Hubschman Construction Co.* (1979), 76 Ill. 2d 31, 43.) An implied warranty of habitability should not be considered waived except by clear and specific language. (*Herlihy v. Dunbar Builders Corp.* (1980), 92 Ill. App. 3d 310, 316-17.) Even when a seller includes in the contract a conspicuous clause specifically disclaiming the implied warranty of habitability, this may not be enough to show that such was in fact the agreement reached. The burden is on the seller to prove that the buyer knew the implied warranty did not attach to the sale of the residence. (*Colsant v. Goldschmidt* (1981), 97 Ill. App.

3d 53, 56; *Tassan v. United Development Co.* (1980), 88 Ill. App. 3d 581, 588-89; see *Petersen v. Hubschman Construction Co.* (1979), 76 Ill. 2d 31, 43.) A disclaimer does not negate an implied warranty unless it is brought to the attention of the buyer and agreed to by him. A purported waiver that is overbroad, too general and unspecific will not adequately put the buyer on notice that he is waiving his warranty of habitability. (*Colsant v. Goldschmidt* (1981), 97 Ill. App. 3d 53, 56.) On the other hand, if the disclaimer language is so clear and so conspicuous that no other reasonable conclusion could be reached but that the buyer both read and understood the language, a court could find as a matter of law that the implied warranty was effectively disclaimed. *Tassan v. United Development Co.* (1980), 88 Ill. App. 3d 581, 589.

In *Tassan v. United Development Co.* (1980), 88 Ill. App. 3d 581, the disclaimer clause provided:

> "*Entire Agreement*: This contract and the matters expressly referred to herein constitute the entire agreement between the parties. No representations, warranties, undertakings or promises, whether oral, implied or otherwise, have been made by Seller or Purchaser to the other unless expressly stated herein, or unless mutually agreed to in writing between Seller and Purchaser. All amendments, modifications, and supplements to this contract shall be in writing executed by both Seller and Purchaser." (88 Ill. App. 3d 581, 586.)

It appeared in paragraph 18 of the standard form contract, on the back of the form, just above the buyer's signature, and in the same print size and type as the other clauses. The court noted that the clause did not mention "habitability" or explain the consequences of such a disclaimer. The *Tassan* court held that this clause was insufficient to show, as a matter of law, that the implied warranty of habitability was effectively disclaimed. 88 Ill. App. 3d 581, 589.

Similarly, in *Herlihy v. Dunbar Builders Corp.* (1980), 92 Ill. App. 3d 310, the purported disclaimer read:

> "NOTICES-REPRESENTATIONS
> * * *
>
> No representations, warranties, undertakings or promises other than those expressed herein whether oral, implied or otherwise shall be considered part of this transaction." (92 Ill. App. 3d 310, 312.)

The court likened the disclaimer clause to that found in *Tassan* and noted, as in *Tassan*, that the clause was located near the end of the standard form contract in the same print size and type as other clauses, that it did not refer to a warranty of "habitability," and that it

did not explain the consequences of the disclaimer. Accordingly, the *Herlihy* court held that it could not find, as a matter of law, that the clause was sufficient to disclaim the implied warranty of habitability. 92 Ill. App. 3d 310, 317; accord, *Colsant v. Goldschmidt* (1981), 97 Ill. App. 3d 53, 57.

■ In holding the clause insufficient to show effective disclaimer of the implied warranty of habitability, both *Tassan* and *Herlihy* partially rely on the fact that the clause did not refer to a warranty of "habitability." The purported disclaimer here likewise does not mention "habitability." In fact, the clause in *Tassan* which was deemed an insufficient disclaimer is nearly verbatim the second clause in dispute in this case (paragraph 14). Under the authority of *Tassan*, paragraph 14 of the purchase agreements does not, as a matter of law, constitute an effective disclaimer of the implied warranty of habitability. See *Tassan v. United Development Co.* (1980), 88 Ill. App. 3d 581, 586, 589; accord, *Herlihy v. Dunbar Builders Corp.* (1980), 92 Ill. App. 3d 310, 317.

We must then consider whether paragraph 5 of the purchase agreements is sufficient to disclaim the implied warranty of habitability as a matter of law. Paragraph 5 essentially provides a one-year express warranty for defective workmanship or material or for failure to substantially comply with the plans and specifications. In bold letters it states that these warranties are given in lieu of any other expressed or implied warranties, including warranties of merchantability and fitness for a particular purpose. This language can be considered an effective disclaimer of the implied warranty of habitability, as a matter of law, only if this court finds the language to be so clear and so conspicuous that no other reasonable conclusion could be reached but that the buyers read and understood the language. See *Tassan v. United Development Co.* (1980), 88 Ill. App. 3d 581, 589.

The disclaimer language in paragraph 5 is in bold-face type and is located on page two of a three-page contract. (See Ill. Rev. Stat. 1983, ch. 26, par. 1—201(10).) The clause refers to the warranties of merchantability and fitness for a particular purpose, and not to any warranty of habitability. We have repeatedly focused on whether the clause mentioned the word "habitability" in determining whether there has been an effective disclaimer. In three cases subsequent to *Petersen v. Hubschman Construction Co.* (1979), 76 Ill. 2d 31, 41-42, we held particular language to be insufficient to disclaim the implied warranty of habitability when, *inter alia*, that language did not mention "habitability." (See *Colsant v. Goldschmidt* (1981), 97 Ill. App. 3d 53, 57; *Herlihy v. Dunbar Builders Corp.* (1980), 92 Ill. App. 3d 310, 317; *Tassan v. United Development Co.* (1980), 88 Ill. App. 3d 581, 589.) Upon a strict

construction of the language of paragraph 5 against Wiseman, as required by Illinois law (see *Petersen v. Hubschman Construction Co.* (1979), 76 Ill. 2d 31, 43), we conclude the language does not effectively disclaim the implied warranty of habitability as a matter of law.

■ Wiseman's final contention is that the trial court erred in awarding damages of $25,443.03 for the breach of the implied warranty of habitability. It argues that the damages awarded were unreasonable and greatly disproportionate to the "benefit" accruing to the association and its members, namely, the increased inconvenience of using the common areas after a rainfall.

The measure of damages in the case of a breach of the implied warranty of habitability is the cost of repair. (*Colsant v. Goldschmidt* (1981), 97 Ill. App. 3d 53, 57.) As the party seeking to recover, it is plaintiff's burden not only to establish that it sustained damages but also to establish a reasonable basis for computation of those damages. (See *Schoeneweis v. Herrin* (1982), 110 Ill. App. 3d 800, 808.) Moreover, this court will not disturb the trial court's findings as to damages unless those findings are against the manifest weight of the evidence. 110 Ill. App. 3d 800, 808.

■ In the present case, the association admitted into evidence an itemized list of repair bills from various contractors, as well as the paid receipts, totalling $21,043.03. The trial court awarded the full amount, plus $4,400 for future repair work. This $4,400 figure for future damages was far below the estimate provided by the association's engineer, John Loos. Loos testified that, in his opinion, the future improvements would cost between $7,800 and $9,500.

Upon a review of the record, it appears the trial court considered all the evidence, including the testimony of George J. Chastain, Wiseman's engineer. Although Chastain believed the drainage problems could have been corrected by simple hand grading at a total cost of $3,245, it was within the discretion of the trial court to determine what it considered to be proper damages. In our opinion, Wiseman has failed to demonstrate that the damages awarded were against the manifest weight of the evidence.

For the reasons expressed above, the judgment of the trial court is affirmed.

Affirmed.

REINHARD and UNVERZAGT, JJ., concur.