**GELDERMANN, INC., Plaintiff,**

v.

**FINANCIAL MANAGEMENT CONSULTANTS, INC., Defendant.**

**No. 86 C 4347.**

United States District Court, N.D. Illinois, E.D.

Feb. 12, 1992.

---

Thomas J. Fleischmann, Gessler, Flynn, Fleischmann, Hughes & Socol, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

### I.

The undersigned Judge, sitting by designation, presided over the trial of this case on December 2 to 9, 1991, in Chicago, Illinois. The jury returned a verdict of $50,-000.00 in favor of the defendant, Financial Management Consultants, Inc. (FMC), and against Geldermann, Inc. Judgment was entered thereon and costs were assessed against Geldermann, Inc. On December 19, 1991, the plaintiff filed a motion for judgment as a matter of law, citing Rule 50(b) and 59 of the Federal Rules of Civil Procedure, and in the alternative, filed a motion for a new trial. That motion was supported by a memorandum. On January 6, 1992, FMC filed a response to the aforesaid motion and this court heard oral argument thereon in Chicago, Illinois, on February 11, 1992. Said motions are now ripe for ruling.

There are many cases that provide appropriate guidance to a district court confronted with these species of post-trial motions. One with which this court is very familiar is *Foster v. Continental Can Corporation,* 101 F.R.D. 710 (N.D.Ind.), *aff'd,* 783 F.2d 731 (7th Cir.1986).

Another very important procedural preliminary must be mentioned. This court held an extensive on-the-record proceeding under Rule 51 of the Federal Rules of Civil Procedure (Fed.R.Civ.P.) and all trial counsel were given an extensive and extended opportunity to make specific objections to instructions given and to instructions refused. Such is the burden of counsel under Rule 51 as it is interpreted in this circuit. *See Spanish Action Committee of Chicago v. City of Chicago,* 766 F.2d 315 (7th Cir.1985). *See also Guerts v. Barth,* 892 F.2d 622 (7th Cir.1989).

Robert S. Steigerwald, Kirkland & Ellis, Chicago, Ill., for plaintiff.

The jurisdictional basis of the claims made in this case between these parties

specifically invoke 28 U.S.C. § 1332, and the substantive law of Illinois was agreed upon.

■ As a more generalized proposition, a general verdict, which this was, gives rise to a presumption that the factual issues have been resolved in favor of the prevailing party. Such a verdict should be given the benefit of the doubt absent a request under Rule 49, Fed.R.Civ.P., where special verdicts are answers to written interrogatories. *See Wassell v. Adams,* 865 F.2d 849, 855 (7th Cir.1989). In fact, this court, during trial, but outside the presence of the jury, raised a question with trial counsel in this case as to whether the parties might request answers to special interrogatories under Rule 49, Fed.R.Civ.P. None were requested.

## II.

■ This court gave instructions 19, 20 and 24, as follows:

A commodities broker is an agent and fiduciary of a customer only with respect to services that the broker agrees to perform on behalf of the customer. Unless a commodities broker agrees to perform additional services on behalf of a customer, the broker's contractual and fiduciary duties are limited to the execution of orders it receives from the customer.

To reach a verdict on FMC's counterclaim, you must first decide what service Geldermann agreed to perform on behalf of FMC. After making that decision, you must decide whether Geldermann properly performed the service that it agreed to perform. Those are the only issues that you are to decide with respect to FMC's counterclaim. (Court's Instruction No. 19)

Geldermann, Inc. has brought a lawsuit against Financial Management Consultants, Inc. (FMC), alleging that FMC breached a customer agreement by which it failed to pay Geldermann for money due on a debit balance.

FMC has brought a countersuit against Geldermann alleging that Geldermann breached the customer agreement in that it failed to carry out FMC's trading instructions. FMC has claimed that, beyond Geldermann's breaches of its contractual obligations, Geldermann violated its fiduciary duties to FMC, its customer, in either of one of two ways: (a) failing to execute trades received by Geldermann either directly or indirectly through Techvest, if you find that Techvest was Geldermann's agent or (2) by taking control of FMC's account. (Court's Instruction No. 20)

A commodities broker is an agent and fiduciary of a customer only with respect to services that the broker agrees to perform on behalf of the customer. Unless a commodities broker agrees to perform additional services on behalf of a customer, the broker's contractual and fiduciary duties are limited to the execution of orders it receives from the customer. (Court's Instruction No. 24.)

No objections were made to any of the above three instructions, and, in fact, Instruction No. 24 was submitted to the court by Geldermann.

In determining whether there is evidence to support the theories outlined in the aforesaid instruction, it is elementary that the factual record must be examined in the light most favorable to the verdict, or in this case, in the light most favorable to FMC. It appears that the jury must have rejected Geldermann's argument that FMC neither directly nor properly requested liquidation of its account.

The witness, Paul Benyola, testified extensively on direct and cross-examination with regard to a telephone call to Geldermann's Chicago office during which he requested that his account be liquidated and closed. A Mr. Dell corroborated this telephonic request. It is for the jury to determine the credibility of Mr. Benyola. There does not appear to be a serious challenge to the statement of Mr. Dell. A Mr. Lerner testified that Mr. Benyola told him (Mr. Lerner) that he (Mr. Benyola) had called Geldermann and told them to close FMC's account. Geldermann made a frontal assault on the credibility of Benyola. It was for the jury to make the initial and funda-

mentally important determination of credibility of the Benyola–Dell–Lerner testimony. It would appear that such determination is implicit in the verdict returned by the jury.

Geldermann next makes an alternative argument. That even if there was a finding that Benyola did request FMC's account to be liquidated, Benyola did not do it with sufficient specificity. Again, a jury question. In this context, the court gave Instruction Number 10, which had been agreed upon by the parties and reads as follows:

> You are instructed that whenever two parties enter a contract, there is an obligation which is implied in the law that both parties will perform their respective duties thereunder in good faith and will cooperate with the other in the performance thereof. You are told that the law further implies that each party to a contract will refrain from doing anything which will have the effect of injuring or destroying the right of the other party to receive the fruits or benefits of the contracts. (Court's Instruction No. 10)

There is evidence through Ms. Sturges, a Geldermann employee, that there was no problem in billing or communicating with FMC on this account, and again, the jury question is presented. There is enough evidence under Court's Instruction No. 10 to support a conclusion that indeed FMC did place an appropriate liquidation order.

█ There was major warfare in this case with regard to the issue of agency between Techvest and Geldermann. Before the case became this Judge's responsibility, both Judges Aspen and Magistrate Gottschall, carefully considered this major issue. When the totality of the record which this Judge inherited is examined, it appears that the issue of agency was sufficiently pled and properly before the court. In this regard, the court gave Instructions 16 and 17, admittedly over the strenuous objection of Geldermann.

## COURT'S INSTRUCTION NO. 16

An agent is a person or corporation who, by agreement with another called the principal, represents the principal in dealings with third persons or transacts business, manages some affair or does some service for the principal, with or without compensation. The agreement may be oral or written, express or implied.

If you find that one corporation has the right to control the actions of another at a given time, you may find that the relation of principal and agent exists, even though the right to control may not have been exercised.

## COURT'S INSTRUCTION NO. 17

Under the law, principals are liable for their agent's acts—even if the agents are not employees—if the principals authorize or ratify the acts or even just create an appearance that the acts are authorized.

Geldermann's agency argument focuses almost entirely on the four corners of the written customer agreement. Citing Judge Easterbrook's concurring opinion in *Cange v. Stotler and Co., Inc.*, 826 F.2d 581, 595–600 (7th Cir.1987), wherein there are comments concerning agency on contractual waivers, the majority in that case, consisting of Judges Cummings and Swygert, did not agree and the law of that case is in the majority opinion. The majority rationalized a general rule that parties to a written contract may alter or modify its term by subsequent oral agreements, even though the contract precludes oral modifications.

All contracts are not written in stone, and some may be modified by later contracts, either written or oral. In an extensive colloquy with counsel, this court retraced the steps of Judge Aspen and Magistrate Gottschall's writings in regard to this agency question. This court was especially impressed with the extensive 40–plus page Report and Recommendation of Magistrate Gottschall dated October 31, 1989. That admiration continues. It is of no small moment that Judge Aspen, a very experienced and highly-talented United States trial Judge, affirmed and adopted the aforesaid recommendation. This court cannot believe that Judge Aspen did so

lightly or without full consideration. *See Rosenthal and Co. v. Commodities Future Trading Commission,* 802 F.2d 963, 968 (7th Cir.1986).

■ It is correct that Geldermann objected strenuously to the giving of instruction numbers 16 and 17. That objection was never based on an assertion that those instructions misstated the law, but rather the objection was based on an assertion that there was no evidence in the record to support the giving of instructions on the issue of agency. It appears that preliminarily, Magistrate Gotschall and Judge Aspen rejected those contentions and this court did so during the course of the trial of this case. There is nothing which has occurred since causing this court to be in the least uncomfortable with submitting the issue of agency between Techvest and Geldermann. Techvest was a guaranteed introducing broker of Geldermann. The guarantee introducing broker agreement provided that Geldermann was jointly and severally liable for Techvest obligations under the Commodity Exchange Act, 7 U.S.C. § 1 et seq. Only Geldermann's forms were supplied to Techvest's customers. Geldermann shared in the fees charged to those customers. Roger Roy testified that Techvest was Geldermann's agent. It is the firm belief of this court that this court had the discretion to permit such testimony and that such testimony was at least admissible under Rule 704 of the Federal Rules of Evidence, if not under Rule 702 subject to the bases of opinion in Rule 703.

*See United States v. Foster,* 939 F.2d 445, 454 (7th Cir.1991). *See also United States v. Lake,* 910 F.2d 414, 417–78 (7th Cir. 1990). There was elaborate testimony by Roger Roy, Herbert Lerner, and Debbie McCafferty, that Geldermann did, in fact, exercise extensive control over Techvest's operation. There was even testimony through Ms. McCafferty that at least one Geldermann employee admitted that Geldermann had taken control of Techvest. That particular Geldermann employee may or may not have been far enough up in the pecking order of the company to bind it in a formal way under Rule 36, Fed.R.Civ.P., or to be a designated representative of the corporation under Rule 30, Fed.R.Civ.P. Notwithstanding those limitations and inhibitions, the testimony of the Geldermann employees with regard to its relationships with Techvest was highly relevant, was admissible, and the admission thereof certainly does not in any way constitute reversible error.

When it is all said and done, agency as between Geldermann and Techvest was an issue in this case and indeed an important one. The various legal positions were carefully considered by this court and this court determined to permit the issue to go to the jury and for evidence to be heard on it. The jury's decision speaks with reference to its consideration of the issue. Neither the instructions given nor the evidentiary rulings of the court constitute any kind of reversible error. Quite to the contrary. It might well have been reversible error if Geldermann had prevailed for this court not to have permitted the issue to go to the jury.

This court in Instructions 19 and 24 also outlined the dimensions of Geldermann's fiduciary duties. Those instructions above quoted speak for themselves. The question raised is whether Geldermann agreed to perform additional services on behalf of its customers. The evidence establishes the affirmative on that question. The jury could have concluded that by April 30, 1986, Geldermann's role in the incident was more than a mere processor of transactions and a maintainer of records. The testimony of all of the key witnesses dealt with that question. The Roy–Lerner–McCafferty–Dell–Benyola evidence all dealt with the issue of whether Geldermann took control of FMC's account. Again, Debbie McCafferty testified that at least one Geldermann employee, Ron Suliga, admitted that Geldermann took control of the Techvest accounts and that Geldermann would "take care of everything." Comments on that precise slice of testimony have been already outlined above and need not be repeated here. By or about May 1, 1986, all significant decisions concerning the FMC account were being made by Geldermann. FMC short positions in May, 1986 potato

contracts were closed when the contract closed. FMC's long positions in the 1987 contracts were liquidated by the end of May, 1986. The jury could have concluded that by the end of April, 1986, Geldermann's agreement with FMC was no longer a "non-discretionary" account agreement. The jury could have concluded that at that time this was an account where Mr. Benyola made the decisions for FMC. But rather it could have concluded that it had become an account where only Geldermann was making trading decisions. It could have concluded factually that the account had indeed become a discretionary account with Geldermann exercising the discretion.

The issue of whether Geldermann took control of this FMC account was squarely placed before this jury. In this very legal and factual context, the jury was required to determine whether Geldermann took on additional services on behalf of FMC, and the evidence in this case is clearly available to support an affirmative answer to that question. Again, it was a question of credibility to be determined in the first instance by the jury sworn to hear this case under the Seventh Amendment of the Constitution of the United States.

Now apparently for the first time, Geldermann raises a question with regard to the standard of proof of any additional fiduciary duties assumed. The burden of proof instruction was given without objection and was a joint instruction submitted by the parties. It was Court's Instruction Number 7, which stated:

## COURT'S INSTRUCTION NO. 7

FMC has admitted that when its account was closed it had a deficit balance of $82,847.49 and that Geldermann would be entitled to a judgment in its favor unless FMC prevails on its counterclaim and/or its affirmative defense. The burden is on FMC in its counterclaim and its affirmative defense to prove every essential element of its claim by a "preponderance of the evidence." A preponderance of the evidence means such evidence as, when considered and compared with that opposed to it, has more convincing force and products in your minds a belief that what is sought to be proved is more likely true than not true. In other words, to establish a claim by a "preponderance of the evidence" merely means to prove that the claim is more likely so than not so.

In determining whether any fact in issue has been proved by a preponderance of the evidence, the jury may consider the testimony of all the witnesses, regardless of who may have called them, and all the exhibits received in evidence, regardless of who may have produced them. If the proof should fail to establish any essential element of FMC's claim by a preponderance of the evidence, the jury should find for Geldermann as to that specific claim.

As indicated above, counsel had a full opportunity on the record under Rule 51, Fed.R.Civ.P., to object and did not do so. *See Will v. Comprehensive Accounting Corp.*, 776 F.2d 665 (7th Cir.1985). Although not necessary, it is the belief of this court that even under the clear and convincing evidence standard, there was enough evidence on this question to submit to the jury.

## III.

This court must now turn to the question of damages where Geldermann does raise serious and important concerns.

This court does not conceive that the law applicable in this circuit or indeed *Agra, Gill & Duffus, Inc. v. Benson*, 920 F.2d 1173 (4th Cir.1990), requires this court on the basis of this complete factual trial record to totally take away this jury verdict and the benefits of it from FMC. Even assuming that *Agra*, 920 F.2d at 1173, is the applicable law in this circuit, there are significant facts in this record to cause this court to stay its hand from a total reversal of the damage portion of the verdict. In *Agra*, the broker was charged with not properly liquidating an account. Here, FMC is not charging that Geldermann could have done a better or more reasonable job in liquidating the account. Geldermann is charged with refusing to do any-

thing with reference to the account after taking control of it. In this regard, the court gave a joint instruction agreed to by counsel, as follows:

> If you decide for FMC and against Geldermann on the question of Geldermann's liability on FMC's counterclaim, you must fix the amount of money which will reasonably and fairly compensate FMC for Geldermann's contract breach or breach of fiduciary duty. (Court's Instruction No. 13.)

Mr. Benyola explained what damage his company sustained as a result of Geldermann's action in taking away his right to trade FMC's account. FMC's Exhibit 13 is an extension of the Benyola testimony in this regard.

### IV.

██ It needs to be emphasized that the verdict here of $50,000.00 in favor of FMC against Geldermann is on FMC's counterclaim.

This court reads implicit, if not explicit, concessions into the FMC brief at pages 11–13. In the FMC counterclaim and in the final pretrial order, FMC asserted damages in the sum of $13,446.08, the same being the equity balance in FMC's account as of April 30, 1986. To the extent that this jury entered a verdict in excess of that amount, it is excessive. There is no contractual right here for this prevailing party, FMC, to receive an award of attorney fees. Neither is there any statutory basis in either the substantive law of Illinois, or any relevant statute enacted by the Congress of the United States for FMC to receive attorney fees. *Compare* 42 U.S.C. § 1988. It is true that under 28 U.S.C. § 1920 and Rule 54, Fed.R.Civ.P. that FMC is entitled to collect its costs, as defined in that statute and in that rule. *See also Pennsylvania Truck Lines, Inc. v. Solar Equity Corp.,* 882 F.2d 221 (7th Cir.1989).

This is a much clearer case for remittitur than in *Bailey v. Andrews,* 811 F.2d 366 (7th Cir.1987). Therefore, there must be a remittitur of the amount representing the difference between $50,000 and $13,446.08, or in the sum of $36,533.92. Unless FMC

agrees to remit that sum of money, reducing the verdict to $13,446, it will be necessary for this court to grant a new trial, limited to the issues of damages alone. As indicated above, costs are assessed in favor of FMC and against Geldermann under Rule 54, Fed.R.Civ.P. and under 28 U.S.C. § 1920. IT IS SO ORDERED.