**GELDERMANN, INC., Plaintiff–Appellant,**

v.

**FINANCIAL MANAGEMENT CONSULTANTS, INC., Defendant–Appellee.**

No. 92–2821.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 13, 1993.

Decided June 21, 1994.

As Amended on Denial of Rehearing and Suggestion for Rehearing En Banc Aug. 25, 1994.

Alan R. Loudermilk, Jenner & Block, Garrett B. Johnson, John E. Angle, Robert S. Steigerwald, William L. Stein, Lise T. Spacapan (argued), Geoffrey Slaughter, Kirkland & Ellis, Chicago, IL, for plaintiff-appellant.

Thomas J. Fleischmann (argued), Steven R. Verr, Gessler, Flynn, Fleischmann, Hughes & Socol, Chicago, IL, for defendant-appellee.

Before POSNER, Chief Judge, and CUDAHY and KANNE, Circuit Judges.

CUDAHY, Circuit Judge.

This is an appeal from the denial of a motion for judgment notwithstanding the verdict and, in the alternative, for a new trial. The district court denied the j.n.o.v. motion, but, finding the jury award to be excessive, granted the new trial motion only if Financial Management Consultants, Inc. 785 F.Supp. 1296 (FMC) refused to accept a remittitur. Geldermann, Inc. (Geldermann) contends that the remittitur is legally improper. Because we hold that there was insufficient evidence to support even the remittitur, we reverse and remand.

I.

Geldermann, the plaintiff, is a commodities broker with whom defendant FMC maintained an account. In August of 1985, the parties entered into a contract whereby Geldermann was to execute transactions for FMC. The contract provided that Geldermann would not be responsible for rendering advice to FMC or exercising trading discretion on behalf of FMC. FMC was to place orders involving commodities futures through its "introducing broker" and investment advisor, Techvest. FMC wished to speculate in commodities futures contracts and, in that

pursuit, had no interest in selling or acquiring the underlying commodity.

Pursuant to the formulation of this contractual relationship, FMC acquired a short position in certain potato futures contracts, including the May 1986 Maine potato contract. A futures speculator is "short" if he has sold one or more futures contracts of a commodity and is obligated to subsequently make delivery. In practice, a speculator rarely makes delivery physically because he offsets his position by buying or selling, as the case may be, an equal and opposite number of contracts in the same delivery month prior to the expiration date of the contract. Margin is the money or collateral deposited by a customer with his broker in order to insure the broker against loss on open futures contracts. If prices go against him, a customer may be required to put up additional margin to keep his account at the level required by his broker. Such a demand by a broker is known as a margin call. In this case, Geldermann had the customary contractual right to liquidate FMC's account involuntarily if FMC failed to meet a margin call.

FMC acquired its short position in reliance on Techvest's forecast that the price of potato futures contracts would drop. However, in early May of 1986, the price of potato contracts rose, forcing FMC's account into a deficit position. FMC alleges that, earlier, rumors in the market had indicated that market manipulation would cause the price rise and that Geldermann knew or should have known about these rumors. At the time, FMC was short 110 contracts, which were due to expire on May 16. In an effort to limit its losses, FMC contends that it tried (through Techvest on May 1 and 2 and then directly with Geldermann on May 5 or 6) to get Geldermann to liquidate its account. FMC alleges, however, that Geldermann had "taken control of the account."[1] FMC's ac-

count balance dropped precipitously from surpluses of $13,400 and $19,800 on April 30 and May 1, respectively, to deficits of $26,500 on May 5, $64,300 on May 16, $80,600 on May 29 and $82,800 on May 30. Geldermann did not liquidate FMC's account until after the May 16 potato contracts had expired. The account showed a final deficit of more than $82,000, which Geldermann paid, as required under the rules of the exchange. Geldermann then sued its customer to recover this amount. FMC, in turn, sued Geldermann based on the broker's alleged failure to liquidate FMC's account in response to FMC's liquidation orders and on the broker's failure to advise FMC of rumored market manipulation.

Geldermann moved for a directed verdict twice during trial, arguing that, under state law, FMC had not presented sufficient evidence to recover the damages alleged. In particular, Geldermann argued that FMC could not recover damages because it had not shown that it had been injured by Geldermann's conduct. Geldermann contends that fewer than 100 contracts were traded on an average day and that far fewer were traded on May 2. At trial, a Geldermann employee testified that, given FMC's large position in potato contracts at the time in question, it would have been difficult, if not impossible, for Geldermann to have liquidated FMC's account immediately upon receiving an order to that effect from FMC. Further, the employee testified that, even if Geldermann had been able to liquidate immediately, the liquidation would have driven up the price of the contracts even further, thereby exacerbating FMC's loss. FMC presented no evidence to refute this theory. Based on this testimony, Geldermann challenged the sufficiency of the evidence.[2]

The district court denied Geldermann's directed verdict motions, and the case went to the jury. Neither party tendered an instruc-

1. When FMC failed to meet its margin calls, Geldermann elected not to exercise its contractual right to liquidate FMC's account.

2. For example, Geldermann argued:
   [T]he customer must prove not only that the broker acted unreasonably but also that his action caused him, the customer, to sustain a

greater loss than he otherwise would have suffered.
Tr. 473. Later, Geldermann argued:
   In short, Your Honor, FMC has failed to prove its damages are caused by any alleged wrongdoing by Geldermann or Techvest acting on behalf of Geldermann.
Tr. 488.

tion that clearly required the jury, as a condition of liability, to find that Geldermann's conduct injured FMC. On the other hand, there was no instruction explicitly stating that such a finding was *not* required.[3] Further, Geldermann did not object to the instructions on the question of injury. The jury returned a verdict in favor of FMC for $50,000. Geldermann moved (again based on the insufficiency of evidence under state law) for judgment notwithstanding the verdict and, in the alternative, for a new trial. The district court denied the j.n.o.v. motion but, finding the jury award to be excessive, indicated that it would grant a new trial unless FMC accepted a remittitur of $36,533.92. The new trial would focus solely on the issue of damages. FMC accepted the remittitur, making the final award to FMC $13,446.08, an amount the court based on the value of FMC's account on April 30, a day or two before the market fluctuations. Geldermann appeals.

## II.

The jurisdiction of the district court was premised on diversity of citizenship. 28 U.S.C. § 1332(a)(1) (1993). Geldermann is an Illinois corporation with its principal place of business in Chicago. FMC is a Delaware corporation with its principal place of business in Mount Laurel, New Jersey. Our jurisdiction is premised on 28 U.S.C. §§ 1291 and 1294(1). Geldermann appeals from the final judgment of June 30, 1992, which the district court entered based on FMC's acceptance of the remittitur. The parties agree that the law of Illinois governs.

### A. *Standard of Review*

We review *de novo* a district court's denial of a motion for j.n.o.v. *Timmerman v. Modern Indus., Inc.*, 960 F.2d 692, 697 (7th Cir.1992); *Trzcinski v. American Casualty Co.*, 953 F.2d 307, 313 (7th Cir.1992) (court of appeals applies the same standard used by the district court in reviewing denial of j.n.o.v. motions).[4] In diversity cases such as this, "state law governs the standard of review of a denial of a motion for judgment notwithstanding the verdict." *Fort Howard Paper Co. v. Standard Havens, Inc.*, 901 F.2d 1373, 1382 (7th Cir.1990). Under Illinois law, a trial court should not take a case away from the jury unless "all the evidence, when viewed most favorably to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & E. R.R. Co.*, 37 Ill.2d 494, 229 N.E.2d 504, 514 (1967).

### B. *State Law Injury Requirement*

Geldermann argues that the district court erred in denying its j.n.o.v. motion because the evidence presented at trial was insufficient to satisfy the *Pedrick* standard. Specifically, Geldermann contends that FMC failed to present enough evidence to withstand its motions for directed verdict and

---

**3.** The jury was given the following instruction without objection:

> If you decide for FMC and against Geldermann on the question of Geldermann's *liability* on FMC's counterclaim, you must fix the amount of money which will reasonably and fairly compensate FMC for Geldermann's contract breach and breach of fiduciary duty.

Tr. 573 (Court's Instruction No. 18) (emphasis added). This appears to be the only part of the instructions that indicates what the jury had to find in order to award damages to FMC. The instruction indicates only that the jury had to find liability before awarding damages. Unless the jury believed, based on Geldermann's arguments at trial, that such liability required a finding that Geldermann caused injury to FMC, this instruction does not clearly seem to require the jury to make a finding of injury. Indeed, it seems likely, if an injury instruction was absent from the instructions, that the jury would have disregarded Geldermann's arguments that a find-

ing of injury was required. On the other hand, the instruction given does not clearly *relieve* the jury of the need to find that Geldermann injured FMC.

**4.** The district court denied Geldermann's motions for directed verdict and did so without explanation. The rules governing rulings on a directed verdict are the same as those governing a motion for j.n.o.v. *Crisostomo v. Stanley*, 857 F.2d 1146, 1150 (7th Cir.1988) ("In a diversity action ... [under Illinois law], a directed verdict for a defendant should not be entered unless all of the evidence, viewed in the light most favorable to the plaintiff, so overwhelmingly favors the defendant that no contrary verdict could ever stand.") (quoting *Pedrick v. Peoria & E. R.R.*, 37 Ill.2d 494, 229 N.E.2d 504, 513–14 (1967)); *Bilski v. Scientific Atlanta*, 964 F.2d 697, 698–99 (7th Cir.1992) (same).

j.n.o.v., in that FMC was unable to show that Geldermann caused FMC's injury. Geldermann claims that, because the Maine potato futures market was so volatile and illiquid during the time in question, it properly elected not to liquidate the accounts of FMC and of other customers trading in Maine potatoes. If an immediate liquidation had been attempted at all, Geldermann reasoned, it would have driven the contract price significantly higher, thus driving the customers' accounts further into deficit. By allowing the contracts to expire rather than liquidating them, Geldermann hoped to minimize FMC's losses. Since FMC presented no evidence that Geldermann's delay-of-liquidation strategy left FMC worse off than it would have been had Geldermann tried to liquidate the account immediately, Geldermann asserts that FMC did not prove that it had been injured by Geldermann.

■ If we were required only to determine whether Illinois law demands a showing of injury to FMC, our work would be simple. For we agree with Geldermann that, to recover damages in Illinois, a plaintiff must indeed prove that he was injured by the defendant and must further prove a reasonable basis for valuing the injury. *Pennsylvania Truck Lines, Inc. v. Solar Equity Corp.*, 882 F.2d 221, 225 (7th Cir.1989) (citing *Vandermyde v. Chicago Transit Auth.*, 73 Ill. App.3d 984, 29 Ill.Dec. 491, 497–498, 392 N.E.2d 48, 54–55 (1979); *Briarcliffe W. Townhouse Owners Ass'n v. Wiseman Constr. Co.*, 134 Ill.App.3d 402, 89 Ill.Dec. 351, 357, 480 N.E.2d 833, 839 (1985)) (plaintiff must establish that he sustained damages and a reasonable basis for computing those damages).

■ Here, the only arguable evidence of injury presented by FMC is an exhibit showing FMC's brokerage account balance on five days in May 1986. But even if this exhibit had shown FMC's account balance on every day in May, the evidence of injury would be inadequate. FMC needed to present evidence that the proceeds of Geldermann's post-expiration liquidation were less than what they would have been had Geldermann moved to liquidate immediately after FMC's order. *See Air et Chaleur, S.A. v. Janeway*, 757 F.2d 489, 494–95 (2d Cir.1985) (broker's evidence of daily trading price was inadequate proof of damages because it did not show that shareholders' failure to enter another "put" agreement to sell their shares at a fixed price would have mitigated damages resulting from broker's breach of existing put agreement). Similarly, the evidence of FMC's April 30 closing account balance is inadequate to support the district court's calculation of the remittitur. The April 30 balance does not, even in comparison with the other daily balances, capture the difference in liquidation proceeds that measures Geldermann's injury to FMC in failing to liquidate the account promptly or to inform FMC of rumored market manipulation.

Indeed, the only basis the district court and the jury had for comparing the final liquidating value of the account to the value that would have been realized by prompt liquidation was the testimony of the Geldermann employee. As noted, that employee surmised that, had Geldermann undertaken to liquidate the account promptly, the resulting upward pressure on the price would have substantially increased FMC's loss. Without a competing market analysis from FMC and given the inadequacy of the evidence of the various account values, there is apparently no evidence in the record showing clearly that FMC was injured by Geldermann. Thus, we must conclude that no reasonable jury could have reached a $50,000 verdict in favor of FMC, nor could the trial court have reasonably granted a remittitur allowing FMC to recover $13,446.[5]

---

**5.** While we know of no other case where this circuit has considered whether, under Illinois law, a customer may recover damages allegedly caused by a broker's failure to follow the customer's liquidation orders, our reasoning here is consistent with the approach taken by the Fourth Circuit in *Agra, Gill & Duffus v. Benson*, 920 F.2d 1173 (4th Cir.1990). In *Agra* the broker liquidated a customer's account over fifteen days, notwithstanding the fact that the customer had ordered immediate liquidation. The broker ignored the order because the customer's account comprised a big position in a volatile market. The broker feared that immediate liquidation would have a substantial impact on price and thereby worsen the customer's eventual loss. The broker sued to recover its loss when, following liquidation, the account was still in deficit.

## C. *Failure to Object to Jury Instructions*

■ But we have other questions than the sufficiency of the evidence. We must consider the possibility of trial error in relation to proof of injury. FMC does not deny its burden, under Illinois law, of showing that it was injured by Geldermann's conduct. But FMC claims that, if Geldermann believed that FMC was required to prove injury, Geldermann should have submitted a jury instruction to that effect or at least objected to the instructions as given. Having failed to address the injury requirement in the jury instructions, Geldermann may not, according to FMC, now reject the jury's verdict.

■ We disagree. As FMC points out, when parties do not object to jury instructions, these instructions generally become the "law of the case." Hence, the instructions limit the circumstances under which the jury verdict may be rejected to those where "no reasonable juror could have found the evidence sufficient *under the instructions it heard.*" *Will v. Comprehensive Accounting Corp.*, 776 F.2d 665, 675 (7th Cir.1985) (emphasis supplied), *cert. denied*, 475 U.S. 1129, 106 S.Ct. 1659, 90 L.Ed.2d 201 (1986); Fed. R.Civ.P. 51. However, we believe that our decision in *Will* does not preclude us from considering whether, without reference to the instructions, FMC presented sufficient evidence to recover damages from Geldermann. In *Will*, we stated:

> The customer counterclaimed, alleging that the broker failed to conduct a "commercially reasonable" liquidation as required by law. When the jury returned a verdict in favor of the customer, the district judge granted j.n.o.v. for the broker, concluding not that the liquidation *was* commercially reasonable but that the customer failed to prove that he was injured by the broker's conduct, as required under the applicable state law. The Fourth Circuit affirmed, reasoning that the customer could not recover because "[h]e was unable to prove that the broker's commercially unreasonable liquidation caused him any harm." *Id.* at 1178.
>
> The district court here found that *Agra* is distinguishable because, the district court surmised, Geldermann was charged with not "doing anything" with the account while the broker in *Agra* was charged with not doing "a more reasonable job" in liquidating the account. *Geldermann, Inc. v. Financial Management Consultants, Inc.*, 785 F.Supp. 1296, 1301–02 (N.D.Ill.1992). This

When a party does not ask for an instruction limiting the kinds of damages the jury may award (*or informing the jury of the things it must find before it may award an item of damages* ), we may reverse the district court's denial of a judgment n.o.v. only if no reasonable juror could have found the evidence sufficient under the instructions it heard. If a party could argue that the evidence was insufficient under the correct legal standard, this would be an indirect method of attacking the instructions, which we have just held defendants may not do.

*Will,* 776 F.2d at 675 (emphasis supplied). However, the portion of this passage in parentheses was not necessary for the holding in *Will.* The defendants in *Will* were not challenging the sufficiency of the evidence supporting the verdicts against them. Rather, the defendants argued only that the damages awarded in these verdicts were excessive. *Id.* at 674; *see also Sims v. Mulcahy,* 902 F.2d 524, 535–36 (7th Cir.) (party who failed to challenge jury instruction on nominal damages could not avoid waiver by characterizing nominal damages as a legal question), *cert. denied,* 498 U.S. 897, 111 S.Ct. 249, 112 L.Ed.2d 207 (1990). Thus, *Will*'s ostensible application of the law of the case rule in circumstances where a party fails to offer instructions "informing the jury of the things it must find before it may award an item of damages" is dicta and does not bind us here.[6] 776 F.2d at 675.

> distinction fails. Both Geldermann and the broker in *Agra* allegedly failed to follow their customers' liquidation orders precisely because they feared that immediate liquidation would adversely affect the market price and thereby leave the customers worse off than if the brokers liquidated more slowly. Following the Fourth Circuit, then, we find that the district court failed to apply the proper legal standard by failing to require a showing that Geldermann's conduct caused injury to FMC.

**6.** In our view, the appeal before us bears a closer resemblance to *Rakovich v. Wade,* 850 F.2d 1180 (7th Cir.) (*en banc* ), *cert. denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988). In *Rakovich,* a § 1983 action was brought against police officers who allegedly retaliated against a member of the city civil service commission for his criticism of the police. The court held, *inter alia,* that under the appropriate standard (which was not explicitly raised at trial or in the jury instruc-

■ Further, as cases before and after *Will* have determined, the law of the case rule does not apply in all situations. In particular, where the reviewing court is determining whether a trial court has erred in denying a motion for directed verdict or a j.n.o.v. motion, it is the law which properly applies and not the law that the trial court announces to be appropriate in its jury instructions that governs. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 120, 108 S.Ct. 915, 922, 99 L.Ed.2d 107 (1988) (plurality opinion) ("[T]he failure to object to a [jury] instruction does not render the instruction the 'law of the case' for purposes of appellate review of the denial of a directed verdict or a judgment notwithstanding the verdict.") (citations omitted), *cited in Boyle v. United Technologies Corp.*, 487 U.S. 500, 513–14, 108 S.Ct. 2510, 2519–20, 101 L.Ed.2d 442 (1988) (indicating that it is not improper for court of appeals to judge sufficiency of evidence under properly formulated legal standard, even though proper standard adopted by court of appeals inconsistent with jury instructions given by district court); *see also Dual Mfg. & Eng'g, Inc. v. Burris Indus., Inc.*, 619 F.2d 660, 663 (7th Cir.) (*en banc*), *cert. denied*, 449 U.S. 870, 101 S.Ct. 208, 66 L.Ed.2d 90 (1980) (quoting *Coca–Cola Bottling Co. of Black Hills v. Hubbard*, 203 F.2d 859, 862 (8th Cir.1953)); *Williamson v. Handy Button Mach. Co.*, 817 F.2d 1290, 1296 (7th Cir.1987) ("A party may challenge the sufficiency of the evidence without objecting to the content of the instructions.") (citing *Dual Mfg.*); 9 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2537 (1971) ("The failure of a party to object to instructions does not make them the law of the case so as to preclude entry of judgment notwithstanding the verdict if this is required by law."). Thus, there is nothing in the case law that precludes us from considering whether the failure to apply the Illinois injury requirement properly affects Geldermann's motion for j.n.o.v.

## D. *Denial of J.N.O.V.*

We proceed, then, to apply the *Pedrick* standard. Under that standard, j.n.o.v. is proper when all the evidence, viewed most favorably to the non-movant, so overwhelmingly favors the movant that no contrary verdict could ever stand. 229 N.E.2d at 514. In order to award damages in this case, the jury needed to find that Geldermann's conduct caused injury to FMC. However, as we have indicated, FMC presented no evidence from which a reasonable jury could find such

tions), the officers were not shown to have been motivated by an intent to retaliate for the commissioner's exercise of his First Amendment rights. Geldermann cites *Rakovich* for the proposition that "an appellate court may consider legal issues properly raised in a motion for judgment as a matter of law, even though not completely set forth in the jury instructions, so long as the instructions are not inconsistent with applicable law ..." Aplt. Br. at 8. The present situation seems to go beyond the holding in *Rakovich*, since the court there apparently stated the above proposition as a hypothetical:

Here *if* the instructions given in the district court state the law of the case for purposes of the judgment notwithstanding the verdict determination, we cannot apply law at odds with those instructions. *Our focus, however, is not on the reasonableness of this jury's evaluation of the evidence.* The instructions given were not entirely complete.

850 F.2d at 1192 (emphasis supplied). The court then applied the proper legal standard to determine whether police officers had an intent to retaliate, basing its analysis on evidence it had gleaned from the record where the parties (however unknowingly) had raised issues relevant to the proper standard. 850 F.2d at 1192 ("[The proper legal standard] is not at odds with the jury instructions. *In any event,* we will style our analysis ... [according to the proper standard] because the issue of retaliation was preserved during trial and the evidence regarding intent well-developed in the record.") (emphasis supplied).

By suggesting a hypothetical situation where the law of the case rule would apply and then sidestepping the rule, the *Rakovich* court implicitly distinguished between two types of cases: (1) cases where the proper standard has been applied by the trial court (and the law of the case rule limits the reviewing court to judging the reasonableness of the jury's application of the standard); and (2) cases where the trial court failed to apply the proper standard (and the law of the case rule does not apply). Thus, while we do not find that *Rakovich* binds this court to affirm the district court based solely on whether the instructions were at odds with the applicable legal standards, we do find that *Rakovich* offers some support for ignoring the dicta in *Will*.

Even if Geldermann's reading of *Rakovich* did bind us, however, we still could consider whether to reverse, since the instructions are not at odds with the causation requirement under Illinois law. *See ante* note 3.

an injury. Even if we draw all the inferences from the evidence in FMC's favor (as we must), we conclude that the jury award against Geldermann was contrary to Illinois law. Likewise, the damages left to FMC after the remittitur are not based on a showing that Geldermann injured FMC. Therefore, even the reduced damages have no proper foundation. And since, under Illinois law, there must be injury, the damage award and remittitur are improper, whether based on Geldermann's failure to notify FMC of rumored market manipulation or on its failure to liquidate the account as soon as FMC requested.[7]

This is not to say that brokers are necessarily free to ignore their customers' orders so long as the customer will be unable to provide sufficient proof of injury. Where a broker breaches the fiduciary duty it owes its customer, Illinois law may permit a properly instructed jury to return a verdict for nominal and punitive damages. *E.g., In re Estate of Halas*, 209 Ill.App.3d 333, 154 Ill.Dec. 170, 568 N.E.2d 170 (1991). Perhaps this is an appropriate way to understand the jury's verdict in this case, returning a $50,000 verdict despite the customer's failure to bring forward any proof of injury. But here, of course, the jury was not instructed along these lines. Further, FMC's argument has focused exclusively on the claim that the jury properly applied the instructions to the facts. We are constrained therefore simply to reverse the denial of Geldermann's motion for j.n.o.v.

### III.

The denial of Geldermann's motion for j.n.o.v. is therefore REVERSED and the matter REMANDED to the district court for the entry of an appropriate judgment consistent with this opinion.

---

7. We do not reach the question whether Geldermann had any *duty* to notify FMC of the alleged market manipulation rumors.